---

(128 App. Div. 103.)

### In re BOARD OF RAPID TRANSIT COM'RS.

(Supreme Court, Appellate Division, Second Department. October 16, 1908.)

1. STATUTES—CONSTRUCTION—LEGISLATIVE INTENT.

　　A thing within the intention of a statute is within the statute, though literal construction excludes it.

　　[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, § 261.]

2. STREET RAILROADS—MUNICIPAL CORPORATIONS—POWERS—CONSTRUCTION OF SUBWAY—NATURE OF POWER.

　　Laws 1894, p. 1873, c. 752, amending the rapid transit act of 1891 (Laws 1891, p. 3, c. 4), authorizing New York City to construct a subway, did not enlarge the city's governmental functions but merely invested it with the powers and franchises it unsuccessfully attempted to sell under the act of 1891, and made it a railroad corporation for the purposes of constructing the subway, with no more rights in the highways and pub-

lic places of the city than would belong to any other corporation, and
with no other or higher right to take private property than would be-
long to an ordinary railroad corporation.

3. EMINENT DOMAIN—COMPENSATION—APPROPRIATION TO ADDITIONAL USE—
STREETS—RAILROAD RIGHTS OF WAY.

Railroads, surface or general, constitute an added burden upon the
streets of a municipality, which the owners of the fee can prevent by in-
junction until compensated for the taking of their property.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain,
§§ 305–311.]

4. SAME—STATUTES—CONSTRUCTION—PRESUMPTIONS.

In construing Rapid Transit Act 1894 (Laws 1894, p. 1886, c. 752) §
39, as amended by Laws 1901, p. 1423, c. 587, § 1, to determine whether
New York City is liable to abutters for damages through the construc-
tion of subways under streets, where the fee is not in the city, the Legis-
lature is to be presumed to have known the law and the right of the own-
ers of the fee to compensation for extra burdens placed upon it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Do-
main, §§ 304–314.]

5. MUNICIPAL CORPORATIONS—STREETS—NATURE.

Streets are part of the highway system of the state, kept open for the
benefit of the state and not the municipality; the municipality being an
agent of the state respecting them.

6. EMINENT DOMAIN—COMPENSATION—APPROPRIATION TO ADDITIONAL USE—
STREETS—RIGHTS OF ABUTTERS.

As to matters which abutters have reasonable opportunity to foresee
will be done in legitimate use of streets for public purposes, no liability
for consequential damages, not due to negligence, is incurred by a munic-
ipality acting within statutory authority; but the rule is otherwise as to
unforeseen burdens upon the street, which the courts have held not in-
volved in the original taking.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain,
§§ 304–314.]

7. SAME—LEGISLATIVE POWER.

The Legislature cannot constitutionally authorize a municipality, in
conducting a business enterprise, to appropriate private property rights
in streets without payment of just compensation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain,
§§ 304–314.]

8. CONSTITUTIONAL LAW — DETERMINATION OF CONSTITUTIONAL QUESTIONS —
STATUTES—CONSTRUCTION—PRESUMPTIONS.

Statutes are presumed to be constitutional, it being assumed that the
Legislature intended to act within its limitations; and where one of
two constructions, each equally reasonable, will render an act valid, it
should be adopted.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional
Law, § 46.]

9. EMINENT DOMAIN — COMPENSATION — APPROPRIATION TO ADDITIONAL USE—
STREETS—UNDERGROUND RAILROAD—RIGHTS OF LANDOWNERS.

Rapid Transit Act 1894 (Laws 1894, p. 1886, c. 752) § 39, as amended
by Laws 1901, p. 1423, c. 587, § 1, authorizing New York City to condemn
"real estate and any rights, terms and interest therein, any and all
rights, privileges, franchises and easements, whether of owners or abut-
ters or others to interfere with the construction or operation of" an un-
derground railroad, authorizes compensation for all property taken for
purposes of the road, and contemplates the taking of the property rights
remaining in the owners of the fee of a street, as well as those abutting
upon the same, where the fee is in third persons.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain,
§§ 304–314.]

**10. SAME.**

Under Rapid Transit Act 1894 (Laws 1894, p. 1886, c. 752) § 39, as amended by Laws 1901, p. 1423, c. 587, § 1, authorizing New York City to condemn property for underground railroad purposes, and section 47, amended by Laws 1895, p. 912, c. 519, § 20, providing that title to condemned property shall vest upon the filing of the oaths of the commissioners of appraisal, title does not vest, so as to defeat the city's liability for damages accruing to property after that date.

**11. SAME—MEASURE OF DAMAGES—GENERAL RULES.**

The rules as to the measure of damages for taking of or injury to land is the same, whether arising in equitable actions or in condemnation proceedings.

**12. SAME—UNDERGROUND RAILROAD IN STREET—MEASURE OF DAMAGES TO FEE.**

Under the rapid transit act of 1891 (Laws 1891, p. 3, c. 4), as amended by Laws 1894, p. 1873, c. 752, and 1901, p. 1423, c. 587, authorizing New York City to condemn property for underground railroad purposes, the measure of damages to the owner of the fee of a street in which the road is constructed is the full value of the property actually taken, without deduction, and just compensation for injury to the remainder, considering the market value of the property before and after the taking.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, §§ 371–377.]

**13. SAME.**

Where the fee in a New York City street is in a third person, an abutter must be deemed to have had an easement or right of subjacent support for his premises, which the city could not take away without just compensation in constructing an underground railroad under the rapid transit act of 1891 (Laws 1891, p. 3, c. 4), as amended by Laws 1894, p. 1873, c. 752.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Easements, § 222.]

**14. SAME—PURPOSE OF CONDEMNATION—MATERIALITY.**

In condemnation proceedings, the purposes for which the property is to be used may be considered in determining whether property not taken is damaged by the taking.

**15. SAME—ELEMENTS OF DAMAGE.**

In a proceeding under the rapid transit act of 1891 (Laws 1891, p. 3, c. 4), as amended by Laws 1894, p. 1873, c. 752, to condemn property for underground railroad purposes, the commissioners of appraisal were bound to consider everything that, if known to a proposed purchaser when title vested in the city, would tend to increase or diminish the market value of premises remaining after the taking.

**16. SAME.**

In a proceeding under the rapid transit act of 1891 (Laws 1891, p. 3, c. 4), as amended by Laws 1894, p. 1873, c. 752, to condemn property for underground railroad purposes, abutters evicted from their homes by undermining of foundations, etc., are entitled to have the fact that the premises were rendered untenantable for a long time considered in an assessment of their damages; the measure not being the cost of restoring the buildings.

**17. SAME.**

While damages inflicted upon abutters in the performance of a public work, reasonably and properly conducted, are damnum absque injuria, where a railroad corporation enters a street and sinks great shafts in carrying on the construction work, the fact may be considered in determining what the market value of abutting premises would be if the condition were known to be involved in the taking of the property of the owners of the fee.

**18. SAME—JURISDICTION OF COMMISSIONERS.**

In a proceeding under the rapid transit act of 1891 (Laws 1891, p. 3, c. 4), as amended by Laws 1894, p. 1873, c. 752, to condemn property for

underground railroad purposes, the commissioners of appraisal have ju-
risdiction of every fact growing out of the construction and operation of
the road without negligence, so far as such facts affect the market value
of the property.

19. EVIDENCE—JUDICIAL NOTICE—POPULATION.
    The Appellate Division takes judicial notice that New York City is
    the only city in the state having more than 1,000,000 population.

20. EMINENT DOMAIN—CONDEMNATION PROCEEDINGS—EXTRA ALLOWANCES.
    The rapid transit act of 1891 (Laws 1891, p. 3, c. 4), as amended by
    Laws 1894, p. 1873, c. 752, authorizing cities of more than 1,000,000 in-
    habitants to take property for public purposes, etc., is an act authorizing
    the acquisition of property for any public purpose in New York City,
    within 3 Laws 1901, p. 425, c. 466, § 998, as amended by Laws 1904, p.
    1885, c. 736, § 1, permitting additional allowances in proceedings under
    such acts.

21. SAME—COUNSEL FEES.
    Rapid Transit Act 1894 (Laws 1894, p. 1896, c. 752) § 62, expressly au-
    thorizes the allowance of counsel fees in proceedings to condemn land un-
    der the act.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain,
    § 692.]

22. EMINENT DOMAIN—"JUST COMPENSATION."
    The term "just compensation," as used in connection with the taking of
    property for public use, involves placing the property owner in the same
    position financially that he would have been in if his property had not
    been taken on a given date.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain,
    § 325.
    For other definitions, see Words and Phrases, vol. 4, pp. 3897–3902.]

Appeal from Special Term, Kings County.

Application by Seth Low and others, board of rapid transit rail-
road commissioners, etc., for the appointment of commissioners of
appraisal relative to acquiring a right of way under certain streets.
From an appraisal and report of commissioners of appraisal, and
from an order confirming such report, and orders denying costs and
allowances, the city of New York appeals, and others file cross-ap-
peals. Reversed and remanded.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR,
and MILLER, JJ.

Theodore Connoly (Royal E. T. Riggs and Joel J. Squier, on the
brief), for board of rapid transit railroad commissioners.

John A. Garver, for Mynderse and Notman estates.

Charles W. West, for Abbott's executrix.

George W. Wingate, for commissioners of appraisal.

WOODWARD, J. The proceeding here under review was insti-
tuted in January, 1903, by the rapid transit commissioners appointed
under the provisions of chapter 4, p. 3, of the Laws of 1891, as
amended by chapter 752, p. 1873, of the Laws of 1894, for the "pur-
pose of performing the duties relative to the premises which are re-
quired to be performed by such commissioners in and by the provi-
sions of such acts of the Legislature," and which had for its object
the compensating of those who had property interests in Joralemon
street, in the borough of Brooklyn, as defined by section 39 of the

rapid transit act (Laws 1894, p. 1886, c. 752). There was no opposition to the application, and the order appointing the commissioners of appraisal was therefore entered. By the report of the commissioners filed in December, 1905, an award was made to John Notman and Wilhelmus Mynderse, as well as to George B. Abbott. Mr. Notman owned property on the south side of Joralemon street, between Sidney Place and Clinton street, his title running to the southerly line of the street, the fee of the street itself being, not in the city of New York, as is the case in the borough of Manhattan generally, but in unknown owners; while Messrs. Abbott and Mynderse owned property on the same side of the street, between Garden Place and Henry street, their title extending to the center of the street. The commissioners have awarded as damages to Mr. Mynderse $15,000, to Judge Abbott $6,000, and to Mr. Notman $12,000. Mr. Notman does not appeal from the award, or from the order confirming the same, except as to the denial of the motion of the claimants for taxable costs and counsel fees. Messrs. Abbott and Mynderse appeal from the award and from the order confirming the same in all respects, on the ground of the insufficiency of the awards, it being claimed that the commissioners adopted a wrong measure of damages; while the city of New York appeals from the several awards on the theory that it is not liable to abutting owners for consequential damages resulting to the premises of the claimants by reason of the construction of the rapid transit subway under Joralemon street.

The principal questions to be determined upon this appeal, aside from the question of costs, are, first, whether the city of New York is liable to abutting owners, where the fee is not in the city, for the damages resulting to property through the proper construction of subways under the streets; and, second, if it is liable, whether the proper measure of damages has been applied. It must be admitted that the provisions of section 39 of the rapid transit act, under which this proceeding was instituted, are not entirely clear upon the question, and yet we are persuaded that a fair reading of the entire enactment, having in mind the purposes to be accomplished and the natural rights of individuals to be secure in their lives and property, will disclose a purpose on the part of the Legislature, in providing for a great public need, to distribute the burden equitably, and not to impose upon those who happen to be along the line of the subways. The constitutionality of this act was challenged on the ground that it did not provide for the compensation of abutting property owners, and an injunction restraining the contractors from constructing the subway in the borough of Manhattan was denied, in March v. City of New York, 69 App. Div. 1, 74 N. Y. Supp. 630, 1151; it being held, upon the authority of Radcliff's Ex'rs v. Mayor, 4 N. Y. 195, 53 Am. Dec. 357, that, as the fee of the street was in the city of New York, the plaintiff had no right to lateral or subjacent support for his buildings, located upon his lands abutting on the street. This case is not controlling here, for the reason that a different state of facts exists. The city is not the owner of the fee of Joralemon street. But, even if the city did own the street, we should still be free to examine and decide the questions here presented, for the case did

not necessarily decide that the statute did not provide for compensation. It merely refused an injunction pendente lite, overruling the plaintiff's contension that the statute was unconstitutional because of its failure to provide for compensation. If the statute does, in fact, provide for compensation, then there can be no question of its constitutionality in this respect, and the very fact that it does provide for the determination of the property rights involved indicates an intention at least to keep within the constitutional limitations, and a thing within the intention of a statute is within the statute, even though an exact literal construction would exclude it. Riggs v. Palmer, 115 N. Y. 506, 509, 22 N. E. 188, 5 L. R. A. 340, 12 Am. St. Rep. 819.

The rapid transit act of 1891 did not contemplate the construction or operation of underground railroads by the municipality. It was designed to provide for the construction of subways through railroad corporations then existing, or to be incorporated. The routes and plans were to be devised by the rapid transit commissioners, and then the franchise was to be sold to a railroad corporation; but the project involved the expenditure of so large a sum of money that no private corporation could be found to undertake the task. Accordingly in 1894 the statute was amended (chapter 752, p. 1873, Laws of 1894) so as to provide for the construction of the subway by the municipality. Sun Pub. Ass'n v. Mayor, 152 N. Y. 257, 273, 46 N. E. 499, 501, 37 L. R. A. 788. "There had been, at that time, no attempt on the part of municipalities to construct their own railroads. Such a project had not been publicly promulgated, discussed, or contemplated," say the court in discussing the constitutional amendments of 1874, in the case last above cited; and it may be safely asserted that at the time of the adoption of the rapid transit act of 1891 no one contemplated the municipal ownership of railroads as a part of municipal government. Indeed, the effect of the statute of 1894, while reluctantly held to be "a city purpose" as that term was used in the Constitution, was not held to be a municipal or political purpose; a matter falling within the governmental functions of the municipality. The governmental powers of the municipality were not enlarged. It was merely invested with the powers and franchises which it had been unable to sell to a quasi public corporation, just as it might have been invested with the powers and franchises of a water company. The city, as a public corporation, or distinct political entity, was endowed by the Legislature with the same powers and privileges which it had sought to confer upon a railroad corporation, and it thus became charged with the same duties and obligations which would have been assumed by a railroad corporation in accepting the franchise. For all the purposes of the construction of this underground railroad it became a railroad corporation, having no more rights in the highways and public places of the city than would belong to any other corporation, and with no other or higher right to take private property than would belong to an ordinary railroad corporation. "In its governmental or public character," says Dillon's Municipal Corporations, § 66, "the corporation is made, by the state, one of its instruments, or the local depositary of certain limited and prescribed political powers, to be ex-

ercised for the public good on behalf of the state rather than for itself. * * * Over all its civil, political, or governmental powers, the authority of the Legislature is, in the nature of things, supreme and without limitation, unless the limitation is found in the Constitution of the particular state. But in its proprietary or private character, the theory is that the powers are supposed not to be conferred, primarily or chiefly, from considerations connected with the government of the state at large, but for the private advantage of the compact community which is incorporated as a distinct legal personality or corporate individual; and as to such powers, and to property acquired thereunder, and contracts made with reference thereto, the corporation is to be regarded quoad hoc as a private corporation, or at least not public in the sense that the power of the Legislature over it or the rights represented by it, is omnipotent." See Conrad v. Trustees of Ithaca, 16 N. Y. 158; Missano v. Mayor, 160 N. Y. 123, 127, 54 N. E. 744.

Considering the city of New York in its capacity of a railroad corporation, not the owner of the fee of Joralemon street in the borough of Brooklyn, it is to be observed that it has been determined by a long line of adjudications that railroads, both surface and general, constitute an added burden upon the streets of a municipality, which the owners of the fee have a right to prevent by injunction until they are compensated for the taking of their property. Peck v. Schenectady Ry. Co., 170 N. Y. 298, 301, 63 N. E. 357, and authorities cited. The Legislature is to be presumed to have known the law—to have known of the right of the owners of the fee in a street to compensation for extra burdens placed upon the same; and it cannot be that it was ever contemplated on the part of an abutting owner, in surrendering the easement of a street to the public, that he was giving the right to undermine his premises and to destroy his premises in the manner which is concededly done in the construction of the subway now under consideration. It is true, in the case of Radcliff's Executors, supra, and those which have followed it, it has been held that a municipal corporation, in grading and working the streets, was not liable for consequential damages, due to the fact that the abutting lands were deprived of lateral support; but in the leading case it was pointed out that the "defendants are a public corporation, and the act in question was done for the benefit of the public, and under ample authority, if the Legislature had power to grant the authority, without providing for the payment of such consequential damages as have fallen upon the testator." The streets of a city are a part of the highway system of the state. They are kept open for the benefit, not of the city, but of the state, the municipality being an agent of the state for this purpose, and, as pointed out in the leading case, "when men buy and build in cities and villages, they usually take into consideration all those things which are likely to affect the value of their property, and particularly what will probably be done by way of opening and grading streets and avenues." Page 207 of 4 N. Y. (53 Am. Dec. 357). There can be no doubt that as to all matters which abutting owners have a reasonable oppor-

112 N.Y.S.—40

tunity to anticipate will be done in the legitimate use of streets. for public purposes no liability for consequential damages, not due to negligence, will be incurred by the municipality in carrying out that which the Legislature has authorized; but when it comes to imposing upon the street burdens which no one had anticipated, and which the courts have held were not involved in the original grant or taking, and when these impositions are for the purposes of the corporation in its private capacity, a very different situation is created.

The case now before us is not to be distinguished in principle from a case which might involve the right of the Brooklyn Heights Railroad Company to make a similar subway in this street, and it would hardly be contended that such a corporation could, under a mere grant from the city, step in and undermine the houses of the claimants without the payment of just compensation. In two of the instances now before us the claimants are the owners of the fee of the street, while in the third case the title is in third parties; and it would be strange, indeed, if the Legislature could, or would, authorize a private corporation to take the property of individuals within the streets, involving large consequential damages to property outside of the street, without the payment of just compensation. While the doctrine of Radcliff's Executors, supra, has been criticised, without resulting in modification in so far as the question then before the court is concerned, there is a very decided tendency on the part of the courts not to extend the application, but rather to enlarge the rights of abutting owners, even where they do not own the fee to the street or highway. This was made manifest in the recent case of Donahue v. Keystone Gas Co., 181 N. Y. 313, 73 N. E. 1108, 70 L. R. A. 761, 106 Am. St. Rep. 549, where it was held that an abutting owner, with no title in the fee of the street, had such an interest in the shade trees in front of his premises, in the street, as to permit him to maintain an action against the gas company for permitting the gas to escape from their pipes and thus to cause the trees to die. In commenting upon the elevated railroad cases, the court say:

"In settling the law to this extent, general expressions have been used by the court, indicating as its opinion that these easements of light, air, and access are the only rights which an abutting owner has in a public street of which he owns no part. Courts settle the law by passing upon actual questions, not by advancing abstract theories, and the words of exclusion should be limited to the facts of the case in hand when they were used, as was doubtless the intention. * * * The easement extends to all parts of the street which enlarge the use and increase the value of the adjacent lot. It is not limited to light, air, and access, but includes all the advantages which spring from the situation of the abutter's land upon the open space of the street. These rights exist whether he owns the fee of the street or not. * * * No adequate reason is given for the attempt to limit the easement to light, air, and access. What distinction in principle is there between these benefits, which are incidental to a street, and any other incidental advantage which adds to the value of abutting land? Why should the law extend protection to the one and withhold it from the other?"

In the case now before us it is not necessary to hold that the abutting owners have any easement in the subjacent support of the land in the street because of their mere position as abutting owners, for they are either the owners of the fee, or the fee is in a third party,

which could give the defendant, as a private corporation, no power to take the support away from the foundations of the claimants' premises. But it is important, as bearing upon the probable intention of the Legislature, to note what the courts have said in reference to the rights of abutting owners; and in Kane v. N. Y. E. R. R. Co., 125 N. Y. 164, 180, 26 N. E. 278, 280, 11 L. R. A. 640, it was said that:

"It is undoubtedly the prevailing doctrine of American jurisprudence that the owner of a lot abutting on a city street, the fee of which is in the municipality, has, by virtue of proximity, special and peculiar rights, facilities, and franchises in the street, not common to citizens at large, in the nature of easements therein, constituting property, of which he cannot be deprived by the Legislature or municipality, or by both combined, without compensation."

Surely, if he has these rights in the streets merely as an abutting owner, he must have higher rights as the owner of the fee; and we are of the opinion that the Legislature has no constitutional right to authorize a municipal corporation to engage in a business enterprise, and to appropriate the rights of property owners in the streets, without the payment of just compensation.

The rule is well settled that statutes are presumed to be constitutional, that the Legislature has intended to act within its limitations, and that where one of two constructions, each equally reasonable, will render the enactment valid, the construction in harmony with the Constitution is to be given the preference. People ex rel. Sinkler v. Terry, 108 N. Y. 1, 7, 14 N. E. 815. Section 39 of the rapid transit act (Laws 1894, p. 1886, c. 752), as amended in 1901 (section 1, c. 587, p. 1423, Laws of 1901), was in effect when this proceeding was instituted, and this section provided as follows:

"Sec. 39. For the purpose of constructing or operating any road for the construction or operation of which a contract shall have been made by the board of rapid transit railroad commissioners, including necessary stations and station approaches, or for the purpose of operating or securing the operation of the same free of interference and right of interference and of action and right of action for damages and otherwise, whether by abutting owners or others, or to provide, lay or maintain conduits, pipes, ways or other means for the transmission of electricity, steam, water, air or other source or means of power or of signals or of messages necessary or convenient for or in the construction or operation of such road, or for the transportation of materials necessary for such construction or operation, or to provide a temporary or permanent way or course for any such conduit, pipe or other means or source of transportation, said board for and in behalf of said city may acquire, by conveyance or grant to said city to be delivered to the said board and to contain such terms, conditions, provisos and limitations as the said board shall deem proper, or by condemnation or other legal or other proceedings, as in this act provided, any real estate and any rights, terms and interest therein, any and all rights, privileges, franchises and easements, whether of owners or abutters, or others, to interfere with the construction or operation of such road or to recover damages therefor, which, in the opinion of the board, it shall be necessary to acquire or extinguish for the purpose of constructing and operating such road free of interference or right of interference. The word 'property' hereinafter used shall be deemed to include any such real estate, and any rights, terms and interest therein, and any such rights, privileges, franchises and easements, whether of owners, abutting owners, or others."

This act, intended as it was to deal with underground railroads, is not to be understood as referring to the easements of light, air, and

access. It is dealing with "any real estate and any rights, terms and interest therein, any and all rights, privileges, franchises and easements, whether of owners or abutters, or others." Certainly land in a highway is real estate, and there is a recognition, not only of the rights of owners, but of abutters, and a provision to enable the city, in its capacity of a private corporation for the construction and operation of a railroad, to purchase, condemn, or otherwise possess itself of all of these rights, interests, franchises, etc.; subsequent sections of the act providing in detail for the taking of the property. If the terms of this act are not broad enough to provide for the compensation for all property to be taken for the purposes of this railroad, what would be necessary to accomplish this purpose? We are of the opinion that the statute does contemplate the taking of the property rights remaining in the owners of the fee of the street, as well as those abutting upon the same, where the fee is in third parties (this evidently being the construction put upon the act by the commissioners of appraisal in their award to Mr. Notman), in so far as such taking is necessary to the construction and operation of the railroad, and that the contention of the city that title vested in the city of New York upon the filing of the oaths of the commissioners of appraisal as provided in sections 46 and 47 of the act, and that no damages accruing to the property of the claimants after than date could be taken into consideration in making the awards, is without substantial foundation. It is true that it is provided in section 47, as amended by Laws 1895, p. 912, c. 519, § 20, that the title shall vest upon the filing of the oaths; but there is no suggestion in the act that the rights of the parties are to be determined entirely by the condition of the property as it exists at that particular moment, without regard to the purposes for which the property is taken. The act provides that "on such filing of the said oath the said city shall be and become forthwith liable to the respective owners of the several parcels of property and the several rights, terms, franchises, easements and privileges appertaining thereto, and of the said rights, franchises, easements and privileges acquired as aforesaid, for the true and respective values thereof"—such values to be determined by the commissioners in the manner recognized by law, of course, in condemnation proceedings. This is the true reading of the statute, and the only one consistent with the rights of all parties; this view being supported by the proviso at the close of section 47, that:

"No action shall be brought to recover the amount of such value or interest unless within eighteen months after the filing of such oath, a report shall not have been duly made by commissioners of appraisal as herein provided, or such report shall not have been confirmed by the Supreme Court as herein provided, so that the said city shall be liable to forthwith pay the amount by such report ascertained to be due for such value or interest."

The title vested at a given time, but the value of the right taken was left open to determination, and this was to be reached in the manner which the rules of law have prescribed in cases of this character.

What, then, is the rule of damages which the commissioners of appraisal were to apply? It is well settled, whether in equitable actions or in proceedings for the condemnation of property under the power of eminent domain, the rule of damages is the same. Bohm v. M. E. R. Co., 129 N. Y. 576, 585, 29 N. E. 802, 14 L. R. A. 344; Henderson v. N. Y. C. R. R. Co., 78 N. Y. 423, 433. In the latter case, the plaintiff being the owner of the fee in a highway, which the defendant had appropriated to its own use, the court say:

"If these questions had arisen upon proceedings by the defendant to acquire the right which it has unlawfully taken, they would properly have been answered in favor of the landowner. He would receive an award, first, for the full value of the land taken; and, second, a fair and adequate compensation for all the injury he had sustained or would sustain by the making of the railroad over or across his lots. Kyle v. A. & Roch. R. R. Co., 2 Barb. Ch. 489. And it would have been proper to ascertain, and for that purpose determine, what effect the change made by the defendant in converting the street into a railroad track would have upon the plaintiff's land. In Troy & Boston R. R. Co. v. Lee, 13 Barb. 169, the court, on reviewing a report of commissioners under the railroad act, say: 'The true rule, the only rule which will do equal justice to all parties, is to determine what will be the effect of the proposed change upon the market value of the property. The proper inquiry is, what is it now fairly worth in the market, and what will it be worth after the improvement is made?' "

In Newman v. M. E. R. Co., 118 N. Y. 618, 623, 23 N. E. 901, 902, 7 L. R. A. 289, the court, in discussing the principle upon which compensation is to be made under the general railroad law, says that the—

"owner is to receive, first, the full value of the land taken; and, second, where a part only of the land is taken, a fair and adequate compensation for all injury to the residue sustained or to be sustained by the construction and operation of the railroad [citing authorities]. The first element in the award," continues the court, "represents the compensation for land which the railroad takes, and to which it requires title. The second element represents damages which are the result or consequences of the construction of the road upon property not taken, and which the owner still retains. Such damages are wholly consequential, and to ascertain them necessarily involves an inquiry into the effect of the road upon the property, and a consideration of all the advantages and disadvantages resulting and to result therefrom. The rule is well stated in Lewis on Eminent Domain, § 471, as follows: 'When part of a tract is taken, just compensation would therefore consist of the value of the part taken and damages to the remainder, less any special benefits to such remainder by reason of the taking and use of the part for the purpose proposed.' * * * Whatever land is taken must be paid for by the railroad company at its full market value, and from such value no deduction can be made, although the remainder of the landowner's property may be largely enhanced in value as a result of the operation of the railroad. But, in considering the question of damages to the remainder of the land not taken, the commissioners must consider the effect of the road upon the whole of that remainder, its advantages and disadvantages, benefits and injuries, and, if the result is beneficial, there is no damage and nothing can be awarded."

The court then points out that the rule under the general railroad law is substantially that of the old rapid transit law, and that it is established that abutting owners have a right to the easement of light, air, and access, and continues:

"The easement is the property taken by the railroad company. But in estimating its value it is impossible to consider it as a piece of property, sep-

arate and distinct from the land to which it is appurtenant, and the right of the property owner to compensation is measured, not by the value of the easement in the street separate from his abutting property, but by the damages which the abutting property sustains as a result or consequence of the loss of the easement. * * * An estimate of such damages, as I have already shown, involves an inquiry into the effect of the railroad upon the whole property and a consideration of all its advantages and disadvantages. If the rental value of the whole building was shown to have been diminished, there was injury for which plaintiff was entitled to recover; but, if the diminished rental value of the upper floors was equaled or overcome by increased rental value in the store, then there was no injury and no basis for a recovery of substantial damages against the defendants."

The court then points out that the provisions of the statutes are founded upon the constitutional provision for just compensation, and say:

"The meaning of the expression 'just compensation' has not been limited to the value of the property actually taken, but has been held to include all consequential injuries which the landowner may sustain by reason of depreciation of value in the residue of the property, by reason of the taking of a part and the construction thereon of the public improvement. This rule affords full indemnity to the property owner, and leaves him in as good condition as he was before the construction of the road. And this is all that any citizen has a right to ask."

Again, in Bohm v. M. E. R. Co., 129 N. Y. 576, 585, 29 N. E. 802, 804, 14 L. R. A. 344, the question was before the court as to the proper measure of damages in taking the rights of an abutting owner, and the court say:

"Generally, in taking land, the rule may be said to be to pay the full value of the land taken at its market price, and no deductions can be made from that value for any purpose whatever. Then, as to the land remaining, the question has been to some extent mooted whether the company should pay for the injury caused to such land by the mere taking of the other property, or whether, in case the proposed use of the said property taken would depreciate the value of that which was not taken, such proposed use could be regarded, and the depreciation arising therefrom be awarded as part of the consequential damages suffered from the taking. I think the latter is the true rule. * * * Before entering on a discussion of these matters I think it proper to say that I should hesitate to admit the correctness of the claim, made by the defendants, that where private property is taken by a mere business corporation, as for a public use under the granted power of eminent domain, the Legislature could provide that such property could be paid for by benefits accruing to the landowner's adjacent property consequent on the taking. This is the case in regard to municipal corporations where land is taken for a public street, or other public and municipal purpose, and where the benefits arising to the adjacent lands of the owner whose property is taken, may be set off against the value of the land taken. So in the case of property taken by the state for canal or other public purposes, where the owner of the land taken was frequently paid its value by the benefits received to his adjacent land not taken. The principle underlying these cases is, however, the right of the municipality or state to tax the owners of the land left, in order to pay for the land taken on the ground that they are specially benefited by the taking, and hence should be specially taxed for the taking of the land. * * * A mere trading or business corporation has no power of taxation, and the state could not delegate such a power to it. If such company desires another's property, it must pay a just compensation for it, and that just compensation would not consist in its doing the owner some benefit upon his remaining property. * * * The value of the easements taken, we have seen, was merely nominal, and the sole question which remains is, therefore, has the owner suffered any damage or injury whatever which has been

caused by this taking? for if there has been no damage there can be no recovery. To ascertain the fact whether there has been damage, an excursion into the realms of possibilities as to what might have happened, but did not, is not permitted. The inquiry whether the land would have been injured if certain circumstances had not occurred, which not only prevented such injury, but enhanced its value, is wholly immaterial. The question is, what in fact has been the actual result upon the land remaining? Has its actual market value been decreased by the taking, or has the taking prevented an enhancement in value greater than has actually occurred; and, if so, to what extent? The amount of such decrease in the value of the remaining land, or the amount of the difference between its actual market value and what it would have been- worth if the railroad had not taken the other property, is the amount of the damage which the defendant should pay. If, on the contrary, there has been neither decrease in value caused by the railroad nor any prevention of an increase from the same cause, how can it be truly said that the lot owner has been injured to the extent of a farthing? The absence of injury may have been the result of the general growth of the city by reason of which the particular property has grown in value with the rest of the city. It is the fact, not the cause, which is material. Where it appears that the property left has actually advanced in value, unless it can be shown that but for the act of defendants in taking these easements it would have grown still more in value, the fact is plain that it has not been damaged."

The rule thus laid down by the court seems to us to answer all of the objections raised by the appellants in this case. So far as the city of New York is concerned, it is, for the purposes of this proceeding, a mere private corporation, engaged in a business enterprise. It is seeking, under the power of eminent domain, to take the property of Messrs. Abbott and Mynderse in Joralemon street, subject to its street easement, and the rule of damages in such a case is the full value of the property actually taken, without deduction, and the fair and just compensation for the injury done to the remainder of the property by reason of such taking, having in mind the market value of the property before and after the taking. While it is true, in the case of Mr. Notman, there was no ownership of the fee, it is equally true that the city of New York did not own the fee. The fee was in a third person, and as against the defendant, as a private corporation engaged in the construction of a railroad, Mr. Notman must be deemed to have had an easement or right of subjacent support for his premises, which the defendant could not take away without affording just compensation. This was clearly the construction put upon the act by the commissioners of appraisal, for, while they awarded the unknown owners a nominal sum for the fee, they awarded Mr. Notman, the abutting owner, $12,000; and this award is amply justified by the evidence, and is, we believe, in accord with the intent of the Legislature. If the abutting owner, with no interest in the fee of the street, was entitled to compensation, there can be no possible question that the claimants owning the fee to the street in front of their premises are likewise entitled to compensation under the rule which we have quoted above.

The commissioners, in their report, award—

"the said George B. Abbott the sum of $6,000 as compensation for the portion of his land which has been taken in Joralemon street in this proceeding, including the injury to his property upon the premises above described adjoining which would necessarily arise from the proper construction, maintenance, and operation of a tunnel under the surface of Joralemon street in -

the manner and as set forth in the plans and specifications and contract above referred to."

And in a subsequent portion of the report it is said:

"The commission will modify their report according to the discussion had at the last meeting, so as to make it appear perfectly clear that they have not considered any damage to property which has been caused after the taking by the city in this proceeding."

And, further, the commissioners say that:

"The rule upon which they have rendered their decision is that the amount which is awarded to Judge Abbott and to Mr. Mynderse is the difference in value of their property before the filing of the oaths of the commissioners and the value immediately after the filing of the oaths of the commissioners, when the title to the property was vested in the city of New York; that if any damage happened by reason of any negligent construction of the contractor, or any damage suffered by reason of the manner in which the work was actually done, beyond such damage as could be contemplated at the time of the vesting of title, such damages can be recovered only in a proper forum, to which the claimants must be limited; that under the rapid transit act the only award that the commissioners in this action can make is the difference in value between the value of the property before vesting and its value after vesting, and if Mr. Mynderse, or Judge Abbott, or anybody else, desired to hold their property after the vesting, they did so at their peril, whether it became enhanced in value or depreciated in value."

It appears to be the contention of the city of New York that at the moment of filing the oaths of the commissioners the title vested in the defendant, and that the damages to be assessed are merely those which existed at the time of the transfer of title, without any regard to the purposes for which the property was taken, which would, of course, mean merely that nominal damages could be awarded. This is obviously not the law. It is manifestly not the law under the rules which have been sanctioned by the courts, which, as we have seen, require that the purposes for which the property is to be used are to be taken into consideration in determining whether there has, in fact, been a damage resulting from the taking as to the property which is not taken. On the part of Messrs. Abbott and Mynderse it is urged that they are entitled to damages for the injury to their premises resulting from the manner of the construction of the subway, as well as for the incidental damages growing out of the obstruction to the street in front of their premises during the progress of the work. It seems to us entirely clear that the commissioners have, in the main, adopted the rule which the courts have long sanctioned; that they have taken their stand at the time that the title vested in the city of New York, and, viewing what has been done in the proper construction of this underground railroad, they have fixed the market value of the premises at the time they were taken, as that market value would probably be if the intending purchaser knew what would be the result of the construction and operation of the railroad, when constructed and operated without negligence, and they have awarded to the claimants the difference between this market value at the time of taking title, and the market value of the premises as they would have been, had there been no taking of the property for the purposes of the railroad.

The difficulty appears to be, however, that they have excluded from their view some of the elements of damage which should have been taken into consideration in the determining of this question. They were bound, in the language of the court in Newman v. M. E. R. Co., supra, to "consider the effect of the road upon the whole of that remainder, its advantages and disadvantages, benefits and injuries." They were bound to consider, in behalf of the claimants, everything that, if known to a proposed purchaser at the time that the title vested in the city of New York, would tend to increase or to diminish the market value of the premises which remained after the taking of the property of the claimants in the street. This is perfectly fair to both parties. It permits the city of New York, in its capacity of a private corporation, to have all the advantage of increase in value of the remaining property by reason of the improvement, while it gives to the claimants the right to compensation, either by this increased value, or by a sum of money, for all the injuries which may result to their abutting property. For instance, if in the construction of this railroad the houses of both the claimants here appealing were absolutely destroyed, and it could be shown that with the improvement constructed by the city of New York the premises were more valuable with the houses destroyed than they would have been with the same houses in perfect condition without the improvement, then there would be no damage resulting to the claimants, and they would not be entitled to compensation. On the other hand, with the claimants evicted from their homes by reason of the undermining of the foundations, the cracking of the walls, and the destruction of the plumbing, gasfitting, etc., there is an element of damage to be considered.

The claimants are not entitled to the cost of making the repairs necessary to restore the buildings to their former condition. That is not the measure of damage. What they are entitled to is to have the fact taken into consideration that the premises were rendered untenantable for a certain length of time; that, if they had been purchased on the date of the taking of title by the city of New York, the purchaser would have been deprived of the use of the premises for the length of time which they were rendered unfit for occupancy. This is clearly an element in the valuation of real estate. A piece of property worth $20,000 to-day in normal conditions, and which cannot be used for a period of two years, is worth in the market its normal value less the value of the use for two years. This was one of the injuries resulting to the property of the claimants by reason of the construction and operation of the road, and it is entitled to compensation, under the rule which we have quoted, quite as much as the material injuries. The rule is very simple. It merely requires that all property remaining, after that which is actually taken is severed, shall be compensated for all injuries resulting from the construction and operation of the railroad. If the house is injured in its rental value—if it is untenantable for two years—it is damaged. If it is injured physically, as in the cracking of walls, the breaking of sewer connections, etc., it is injured, and the market value of the premises on the day of the title vesting in the city of New York is to be measured, not by what is known or contemplated at the vesting of such title,

but what actually occurs in the construction and operation of the railroad. If the result of the improvement is to advance the value of the premises in spite of these injuries, then there has been no damage, even though the buildings should be wholly destroyed.

We are speaking now, of course, of the construction and operation of the railroad without the element of negligence. We are assuming the work to be done, as appears to have been done here, without fault on the part of the contractors; the injuries being only such as must necessarily result from the construction of a work of this character. "An estimate of such damages as I have already shown," say the court in the Newman Case, supra, "involves an inquiry into the effect of the railroad upon the whole property and a consideration of all its advantages and disadvantages. If the rental value of the whole building was shown to have been diminished, there was injury for which plaintiff was entitled to recover; but, if the diminished rental value of the upper floors was equaled or overcome by increased rental value in the store, then there was no injury, and no basis for a recovery of substantial damages against the defendants." This rule, if applied, will be found to work substantial justice to all parties. It pays the claimants the full value of the property taken, without any reference to its effect upon other property. It then compensates them for all the disadvantages and all the injuries which the abutting property suffers by reason of the use which is made of the part taken, by offsetting the disadvantages and injuries by the advantages flowing to the property remaining by reason of the improvement, and pays in money the difference between the value of the premises on the day that title passes as it then is and its value as it would be if all of the facts were known at that time.

This necessarily involves a consideration of every element which goes to make up the market value of the premises in any legitimate sense, no matter at what time it may occur, if it is the result of the proper construction and operation of the railroad. It does not, as we have suggested, call for restoring the houses of the claimants to their original condition. It merely involves considering the facts, just as time has developed them, and determining what the market value would have been of the premises on the day that the title passed, if all of the facts as they have been shown to exist had been known then. It involves the consideration of the advantages which have come to the premises, either by way of the general advance in the price of property, or by reason of any special advantages which have resulted from the construction and operation of the railroad, and which, if known at the time of the transfer of title, would have tended to advance the market price. In other words, the city of New York is to have the advantages of the purchase on the day that title passed. Anything which has had a tendency to advance the price of the property not taken, since the day of the taking of the fee in the street, inures to the benefit of the city in offsetting the damages resulting from the construction and operation of the railroad, and it is but fair and right that the claimants should be compensated for any loss which they may have suffered by reason of such construc-

tion and operation over and above any such resulting increase in the value.

In this view of the case, we are persuaded that the claimants are entitled to have taken into consideration the damages resulting to them by reason of the necessary construction of shafts in the street near to their premises, in so far as these would have a tendency to diminish the market value of the property, by reason of the consequential damages. It is probably true that damages which are inflicted on abutting owners in the performance of a public work, reasonably and properly conducted, are regarded as damnum absque injuria (Bates v. Holbrook, 171 N. Y. 460, 469, 470, 64 N. E. 181), in the sense that they give rise to no cause of action for the necessary injuries and annoyances; but, where a railroad corporation enters a street and sinks great shafts for the purpose of carrying on a work which is undermining the claimant's premises, we think that the fact may properly be taken into consideration in determining what the market value of the premises would be if this condition was known to be involved in the taking of the property of the owners of the fee. It goes to the rental value of the property during the time that the work is in progress, and this is one of the consequential injuries growing out of the taking of the property of the claimants in the street, and comes fairly within the rule of damages which, it seems to us, is applicable to the situation here involved.

It appears from the commissioners' statement of the rule which they applied that they have not taken these matters into consideration. It is true, of course, that they have no jurisdiction of injuries resulting from negligence in the work; but, if we are right in concluding that this is a case which requires the application of the rules governing in condemnation proceedings, then they have jurisdiction of every fact growing out of the construction and operation of the railroad, without negligence, in so far as such facts have a bearing upon the market value of the property after the taking. They are not to compensate for the physical injuries to the house, in the sense that this would be done in an action for negligently causing injuries; but they are to take into consideration all that has been properly done in making use of the property which they have taken in its relation to that which remains of the original plot, and to leave the claimants in the same position that they occupied on the day that the city of New York took possession of the property. In other words, they are to provide "just compensation" for the property which has been taken, as that term is understood in the jurisprudence of the state, and this involves placing the property owner in the same position, financially, that he would have been in if his property had not been taken on a given date. The transaction is completed on the day that title passes, but the amount of the compensation has to be determined by the result of the taking to the property which remains after such taking, and this can be determined only by taking into consideration every fact connected with the construction and operation which tends to fix the market value of the property; such facts relating back to the day of passing title.

A different result was reached in Sears v. Crocker, 184 Mass. 586, 69 N. E. 327, 100 Am. St. Rep. ·577; but this grows naturally out of the conflict long existing between that jurisdiction and this as to the question of whether a railroad in a public street constituted an additional burden. Massachusetts has always held that it did not, while, as we have seem, it has always been held in this state that they were added burdens, demanding compensation for the owner of the fee. The Massachusetts case cited merely holds, in conformity with its previous decisions, that a subway does not constitute an added burden, and, therefore, that the owners of the fee were not entitled to an injunction restraining the construction of such a railroad.

The learned court at Special Term denied motions for costs, counsel fees, extra allowances, etc., on the ground that it was without power to grant the same. In an opinion the court say:

"The commissioners make the application under the provisions of the charter (3 Laws 1901, p. 425, c. 466, § 998, as amended by Laws 1904, p. 1885, c. 736, § 1). That act permits additional allowances to be granted in proceedings instituted pursuant to the provisions of the charter, or 'pursuant to the provisions of any other act or law providing for the acquisition of property for any public purpose in the city of New York.' The law under which these proceedings are taken is not an act or law providing for the acquisition of property in the city of New York, but is general in its character, and applies to all cities of the state included in its provisions. Laws 1891, p. 3, c. 4, § 1."

It seems to us that the learned court labors under a misapprehension. If the rapid transit act of 1891 is not an act "providing for the acquisition of property for any public purpose in the city of New York," what is it? True, the act is general in its terms; but it certainly provides for the "acquisition of property" for public purposes, and, if not in the city of New York, then not anywhere, for the court will take judicial notice of the fact that it is the only city in the state having more than 1,000,000 inhabitants. But, suppose there were a dozen cities having the requisite population; would it any the less provide for taking property for public purposes in the city of New York? It is a general act providing for rapid transit in cities of a class. It provides for taking property for public purposes in any such city, and, when the rapid transit commissioners for the city of New York institute proceedings under that act, they are authorized by law to acquire property for public use in the city of New York, and the case is thus brought within the letter and the spirit of the provisions of the charter for the payment of allowances, counsel fees, etc. In discussing this general question in Matter of the City of New York (Town of Hempstead), 125 App. Div. 219, 222, 109 N. Y. Supp.· 652, affirmed without opinion 192 N. Y. ——, 85 N. E. 1117, this court said:

"The Constitution (article 1, § 6) requires that private property shall not be taken for public purposes except on the payment of 'just compensation,' and a man who is forced into court, where he owes no obligation to the party moving against him, cannot be said to have received 'just compensation' for his property if he is put to an expense appreciably important to establish the value of his property. He does not want to sell. The property is taken from him through the exercise of the high powers of the state, and the spirit of the Constitution clearly requires that he shall not be thus compelled to part with what belongs to him without the payment, not alone of the abstract val-

ue of the property, but of all the necessary expenses incurred in fixing that value. This would seem to be dictated by sound morals, as well as by the spirit of the Constitution, and it will not be presumed that the Legislature has intended to deprive the owner of property of the full protection which belongs to him as a matter of right."

In the case now before us the statute has provided, in addition to the provisions of the charter, by section 62 of the rapid transit act (Laws 1894, p. 1896, c. 752), that the—

"fees of the commissioners and the salaries and compensation of their employés, and all other necessary expenses in and about the said proceedings provided for by this act, and such allowance for counsel fees as may be made by order of the court, and all reasonable expenses incurred by said counsel to the corporation, or other principal legal adviser of said counsel designated by him for the proper presentation and defense of the interests of said city before said commissioners and in court, shall be paid by the comptroller or other chief financial officer of said city out of the funds referred to in the last preceding section."

This language, it seems to us, is intended to provide for the case of counsel fees, in harmony with the general principles above enunciated, and we are of the opinion that the court at Special Term was not without power to grant the motions.

The report of the commissioners, together with the order affirming the same, should be reversed, and the case should be sent back to the commissioners to redetermine the matters, under the rules suggested in this opinion, and the orders denying costs and allowances, on the ground of lack of power, should be reversed. All concur.