[No. 38768.     Department Two.     October 19, 1967.]

ZILLAH FEED YARDS, INC., *Respondent*, v. S. P. CARLISLE *et al., Appellants.**

*J. P. Tonkoff* (of *Tonkoff, Holst & Hanson*), for appellants.

*C. W. Halverson* (of *Halverson, Applegate, McDonald & Weeks*), for respondent.

HAMILTON, J.—Respondent, a corporation, is engaged in buying and fattening beef cattle for market. To accomplish

*Reported in 432 P.2d 650.

this purpose it owns and operates feed yards in Zillah, Washington. Mr. C. A. Courtright, as president of the corporation, manages the business. Manure is a natural by-product of the operation and is adaptable to farm fertilization.

Appellant S. P. Carlisle is an experienced farmer, and at the time here concerned farmed upwards of 900 acres of land in the Yakima Valley located near Zillah. He raised beets, mint, and various other crops, including some wheat and barley.

On February 12, 1961, Messrs. Carlisle and Courtright orally agreed that respondent corporation would deliver and spread 1,000 tons of manure fertilizer upon a portion of appellants' property in exchange for 200 tons of wheat straw stacked on appellants' premises. The agreed valuations, for exchange purposes, were $3 a ton for the manure and $15 a ton for the straw, f.o.b. appellants' ranch. To carry out the fertilizing aspects of the agreement, Mr. Courtright contracted the services of Ervin and Allen Yoerger, who regularly engaged in the business of loading, hauling, and spreading manure with Ervin acting as manager and Allen as job foreman. Deliveries commenced on February 14, 1961, with the Yoergers utilizing up to eight trucks capable of hauling an over-all average of 11 tons of manure per load, and with Mr. Carlisle generally indicating the areas of the acreage he wished fertilized, which, according to Mr. Carlisle, did not exceed 110 acres.

At about the time the 1,000 tons of manure had been delivered and spread, Messrs. Carlisle and Courtright casually met in Zillah's Squeeze Inn, a restaurant. A second oral arrangement was then reached, whereby it was agreed that additional manure from two of the respondent's feeding pens would be delivered and spread in exchange for additional straw or fodder to be supplied from the Carlisle ranch. It was understood that no money was to change hands—only the respective products at their agreed or market values. Manure deliveries thereafter continued until—according to respondent's calculations—a net of 9,378 tons

had been delivered and spread. When adequate straw and/or suitable fodder was not forthcoming from Mr. Carlisle during 1961, 1962, and 1963 to meet the value of the manure, computed at $3 per ton, respondent corporation commenced suit seeking judgment in the sum of $23,840 as the balance due after credits for the straw and fodder supplied by appellants.

Trial was had to the court sitting without a jury. The principal questions in dispute revolved about the amount of manure delivered and the quantities and quality of the straw and fodder provided and/or acceptable in exchange for the manure.

The trial court resolved the conflicts in the evidence in favor of respondent corporation, and, after allowing credits for suitable exchange products delivered or available, entered judgment against appellants in the sum of $21,394.03, together with interest from October 3, 1963. This appeal followed.

Appellants make seven assignments of error, which they in turn combine and reduce to four arguments. Two of the arguments or contentions are addressed to legal issues passed upon by the trial court, and the remaining two claims are directed to the credibility and weight of respondent's evidence and/or the sustainability of the trial court's findings of fact based thereon.

By one of their claims of legal error, appellants attack the admissibility of two exhibits reflecting the basis upon which respondent computed the tonnage of manure delivered and spread upon appellants' premises. The first of these exhibits (exhibit No. 2) purports to be a tally sheet, prepared by Ervin Yoerger in the regular course of the Yoerger brothers' trucking business, listing the daily number of loads of manure hauled to the Carlisle farm between February 14 and March 20, 1961. The second exhibit (exhibit No. 3), is the invoice prepared by respondent's bookkeeper and sent to appellants around March 27, 1961. This exhibit reflects the number of loads delivered as indicated

by exhibit No. 2 and contains the computation by which the net tonnage of 9,378 tons was determined.

Appellants assert that these exhibits were not properly identified as business records and that, in any event, they do not fall within the ambit of the Uniform Business Records as Evidence Act (RCW 5.45.020) and, accordingly, amount to hearsay.

We cannot agree with appellants.

RCW 5.45.020 provides:

> A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

As we stated in *Cantrill v. American Mail Line, Ltd.*, 42 Wn.2d 590, 607, 257 P.2d 179 (1953):

> The uniform act was passed by the legislature for the purpose (among others) of making evidence that would otherwise be hearsay competent evidence. Where (as here) the trial court is satisfied that sufficient testimony has been adduced regarding the manner in which certain records have been kept, and that their identity has been properly established in compliance with the act, no objection on the ground of hearsay can be entertained.
> . . .
> In this state, the ruling of the trial judge in admitting or excluding such records is given much weight and will not be reversed unless there has been a manifest abuse of discretion.

In the instant case, exhibit No. 2 was produced by respondent's bookkeeper who testified he was custodian of respondent's business records. He further testified that exhibit No. 2 was a part of those records, had been delivered to him by Ervin Yoerger as a tally sheet of the hauling work performed by the Yoergers between February 12 and March 20, 1961, and formed the basis upon which the Yoergers were paid for the Carlisle hauling as well as the other

drayage reflected upon the exhibit. Ervin Yoerger, as manager of the Yoerger brothers' business enterprise, in turn, identified the document as being the original record regularly prepared by him upon which he entered at the end of each day the number of loads of manure hauled by the Yoerger brothers' trucks during the period in question. He stated that the daily entries were made by him and his brother, Allen, as job foreman, from information gathered from a daily comparison of the load counts kept by the operator of the loading machine and the various truck drivers. Allen Yoerger likewise identified exhibit No. 2 and verified the manner, mode and method of compiling and making the entries, as well as asserting the accuracy thereof.

A carbon copy of exhibit No. 3 (respondent's invoice to appellants) was likewise produced by respondent's bookkeeper, who identified it as being a part of respondent's regular business records of which he was the custodian. He testified that the invoice was prepared by him in the ordinary course of business from the information supplied by exhibit No. 2, and that the original invoice was mailed to appellants on March 27, 1961. Appellants acknowledged receipt of the original invoice and offered it into evidence in lieu of the carbon copy.

Against the background of this testimony, the trial court did not abuse the discretion vested in it in admitting the exhibits into evidence. The documents constituted competent evidence within the contemplation of RCW 5.45.020. The credibility and weight to be attached to the testimony of respondent's witnesses and to the content of the exhibits were for the trier of the facts. *Unosawa v. Wright*, 44 Wn.2d 777, 270 P.2d 975 (1954).

By their second claim of legal error, appellants assert the trial court was, by the terms of the agreements between the parties, effectively precluded from awarding a money judgment against appellants. This contention is predicated upon the initial understanding between the parties that the transaction involved an exchange of commodities only.

From this premise, appellants assert the trial court necessarily rewrote the agreements when a money judgment was granted. They do not otherwise challenge the measure of damages.

We do not find the authorities relied upon by appellants to be apropos, and we cannot otherwise agree with appellants.

█ The allowance of a money judgment was based upon the trial court's findings of fact, the gist of which was that respondent had fully performed its bargain whereas appellants had failed, neglected and/or refused to fully perform theirs. In short, the trial court found that appellants had breached their agreement.

Under these circumstances an award of compensatory damages was proper. *Platts v. Arney*, 50 Wn.2d 42, 309 P.2d 372 (1957). Such an award did not amount to a rewriting of the contract.

By their remaining assignments of error and arguments, appellants attack the trial court's factual findings. They essentially contend that pertinent findings are without substantial and credible evidentiary support.

Again, we are constrained to disagree.

A careful perusal of the statement of facts reveals substantial evidentiary conflict revolving about the amount of manure delivered to and spread upon appellants' fields, the wisdom and unwisdom of the quantities applied per acre, the quantity of straw available and received by respondent in return for the manure, the acceptance or rejection of beet leaves and mint hulls by respondent as fodder in lieu of straw, and the motives of respondent as may have been prompted by an accumulation of manure and/or a lack of storage space for either manure or fodder. It is not a lack of evidence upon these various issues which portrays appellants' arguments. Rather, appellants' contentions essentially address themselves to the believability, reliability, and reasonableness of respondent's evidence as such bears upon these issues.

246

■ Such being the theme, we are obliged to observe that the trial court had the witnesses before it, listened to and observed them, evaluated their credibility and weighed their evidence, considered the arguments of able counsel for the parties, and resolved the evidentiary conflicts in respondent's favor. Although, from our view of the cold record, we can say we might have reached different results had we been sitting as a trial court, we cannot say that the trial court's findings upon the disputed issues are without competent, credible, and substantial evidentiary support. This being so, we are constitutionally inhibited from substituting our evaluations of the evidence for those of the trial court. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

The judgment is affirmed.

FINLEY, C. J., HILL and DONWORTH, JJ., and DENNEY, J. Pro Tem., concur.