[No. 41773.    En Banc.    October 21, 1971.]

THE STATE OF WASHINGTON, *Appellant,* v. CHARLES ROGER SILER *et al., Respondents.*

*Slade Gorton, Attorney General,* and *Robert V. Jensen, Assistant,* for appellant.

*James P. Hunter* and *William W. Baker* (of *Anderson, Hunter, Carlson & Dewell*), for respondents.

STAFFORD, J.—The State of Washington appeals from an order and judgment awarding attorneys' fees to the respondents.

A condemnation action was filed in Snohomish County for the purpose of acquiring a portion of the respondents' property. The state's written offer of $80,150 was rejected. However, the parties stipulated for an order adjudicating public use and for an order of immediate use and possession. Pursuant thereto the state paid $80,150 to the Snohomish County Clerk as its tender of just compensation.

In the meantime, the respondents retained counsel, agreeing to pay them one-third of any amount which the jury might award in excess of the state's written offer.

The case was finally tried following a lengthy continuance requested by the state. After 8 days of testimony, the jury found the land had a value of $345,000. The verdict was not appealed.

The trial judge awarded respondents attorneys' fees of $88,283.33. The state acknowledges respondents are entitled to "reasonable attorney's fees" pursuant to RCW 8.25.070. However, it contends the fees awarded were not reasonable.

The state argues that it should not be bound by contingent fee agreements entered into between condemnees and their attorneys. It also urges that a contingent fee of one-third of the amount awarded, in excess of the state's writ-

ten offer, is not a "reasonable attorney's fee" within the meaning of RCW 8.25.070.

Granted, respondents and their attorneys had a contingent fee agreement. Furthermore, it is clear that the fee awarded corresponded with the fee to which the attorneys would have been entitled under such an agreement. Nevertheless, the facts do not support the state's position.

 Contrary to the state's assertion, the record does not indicate that the trial court based its award on the respondents' contingent fee contract. In addition, the record does not indicate that the trial court's award was based on the theory that a contingent fee agreement, of one-third of the increase over the state's written offer, is *prima facie* reasonable. Thus, we reach neither the question of whether the state may be bound by such a contingent fee agreement, nor the question of whether such an agreement is *ipso facto* reasonable for the purpose of RCW 8.25.070.

As we stated in *State v. Roth,* 78 Wn.2d 711, 716, 479 P.2d 55 (1971):

> Many factors enter into a court's determination of the "reasonableness" of fees. . . . Consequently a trial judge is given broad powers in making such a decision.

The trial court conducted a series of hearings to resolve the issue. Testimony was offered pertaining to the amount of work done. The trial judge commented:

> In seventeen and one half years upon the bench and having tried numerous and substantial number of condemnation cases, I must say that this case presented the most difficult questions that I have ever encountered in the trial of a condemnation.

At another point, the judge remarked:

> I might also add as far as the "skill required", counsel did an outstanding job as far as both sides of the controversy were concerned.

It was entirely proper for the trial court to have considered the time and labor required, the novelty and difficulty of the question involved as well as the skill required

properly to conduct the cause. Canon of Professional Ethics 12(1).

It must not be forgotten that the state's final written offer for respondents' property was $80,150. As a result of services furnished by their attorneys, the jury dramatically increased respondents' compensation to $345,000. It was proper for the trial court to have considered the amount involved in the controversy as well as the benefits derived by the respondents from the services of their attorneys. CPE 12(4).

Both the state and the respondents presented extensive expert testimony concerning the value of services rendered by respondents' attorneys. Needless to say, it was in considerable conflict. It was necessary for the trial court to resolve the dispute.

The trial court had the witnesses before it, listened to and observed them, evaluated their credibility, weighed their evidence, considered the arguments of counsel and resolved the evidentiary conflict in favor of respondents. We cannot say that the trial court's finding upon the disputed issue exceeded the limits of the testimony or was without substantial evidentiary support. This being so, we are constitutionally inhibited from substituting our evaluation of the evidence for that of the trial court. *Zillah Feed Yards, Inc. v. Carlisle*, 72 Wn.2d 240, 432 P.2d 650 (1967); *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

In passing, it should also be noted that it was entirely proper for the trial court to have considered the customary charges of the bar for similar services as well as the contingency or certainty of the attorney's compensation. CPE 12(3), (5).

Based upon the record before us, the criteria upon which the trial court relied was entirely proper. There was no abuse of discretion.

[A]buse of judicial discretion is not shown unless the discretion has been exercised upon grounds, or to an extent, clearly untenable or manifestly unreasonable.

*State ex rel. Beffa v. Superior Court,* 3 Wn.2d 184, 190, 100 P.2d 6 (1940).

The decision of the trial court is affirmed.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, HALE, NEILL, SHARP, and WRIGHT, JJ., concur.