820 P.2d 695

STATE of Idaho, ex rel., John M. OH-
MAN, Marion Davidson, and Phil Batt,
Idaho Transportation Board, Plain-
tiffs–Respondents,

v.

IVAN H. TALBOT FAMILY TRUST,
Ivan H. Talbot, Trustee, Defendants–
Appellants,

and

United States of America, acting through
the Small Business Administration;
and United States of America, acting
through the Farm Home Administra-
tion, Defendants.

LAVERN C. TALBOT FAMILY TRUST,
Lavern C. Talbot, Trustee,
Defendants–Appellants,

v.

UNITED STATES of America, acting
through the SMALL BUSINESS AD-
MINISTRATION; and United States of
America, acting through the Farm
Home Administration; and Franklin
County, Defendants.

No. 18833.

Supreme Court of Idaho,
Idaho Falls, Sept. 1991 Term.

Nov. 12, 1991.

Smith & Hancock, Rexburg, for defendants-appellants. J.D. Hancock, argued.

Larry J. EchoHawk, Atty. Gen., Patrick W. Fanning, Deputy Atty. Gen., Boise, for plaintiffs-respondents. Patrick W. Fanning, argued.

McDEVITT, Justice.

The Idaho Transportation Board brought three separate actions against the defendants seeking to condemn three different parcels of land for an additional right-of-way for U.S. Highway 91 in Franklin County. One parcel was owned by the Ivan H. Talbot Family Trust, the second parcel was owned by the Lavern C. Talbot Family Trust, and the third parcel was owned jointly by the two trusts. The three actions were consolidated for trial and were also consolidated on appeal. From the jury verdict awarding damages to the property owners and from the district court's decision denying the award of attorney fees the property owners appeal. We affirm.

## ISSUES

The issues involved in this appeal are:

(1) Did the district court err in not allowing the property owners to reopen the case?

(2) Did the district court err in giving Jury Instructions Nos. 6 and 7?

(3) Was the jury verdict adequate?

(4) Did the district court err in denying the award of attorney fees to the property owners?

## I. FAILURE TO REOPEN THE CASE

The property owners allege that it was necessary to reopen the case to rebut the testimony of the State's expert witness, Mr. Kelley. The property owners assert that the State's expert inaccurately testified as to comparable sales of property in Franklin County.

Recently, in *Davison's Air Service, Inc. v. Montierth*, 119 Idaho 967, 812 P.2d 274 (1991), this Court reiterated the rule that a motion to reopen a case is within the discretion of the trial court. *See also Gano v. Air Idaho, Inc.*, 99 Idaho 720, 587 P.2d 1255 (1978); *County of Bonner v. Dyer*, 92 Idaho 699, 448 P.2d 986 (1968); *Froman v. First Nat. Bank*, 35 Idaho 10, 204 P. 145 (1922).

This standard was clarified in *Lisher v. Krasselt*, 96 Idaho 854, 857, 538 P.2d 783, 786 (1975), where we stated:

> We decline to ascribe a definitive meaning to the amorphous phrase "abuse of discretion" solely for the purposes of this case, but it will suffice to say, that where the trial court has exercised such discretion after a careful consideration of the relevant factual circumstances and principles of law, and without arbitrary disregard for those facts and principles of justice, we will not disturb that action. (Footnotes omitted.)

As an example, in *Silkey v. Tiegs*, 51 Idaho 344, 5 P.2d 1049 (1931), the appellants appealed from an order refusing to reopen the case and this Court stated:

> Granting or refusing a motion to reopen a case for the purpose of taking further or additional evidence, after it has been submitted for decision, but before entry of judgment, rests in the discretion of the trial judge.

*Silkey*, 51 Idaho at 350, 5 P.2d at 1055 (citations omitted).

We then turn to the record to determine if the trial court abused its discretion. The last witness to testify was the State's expert, Mr. Kelley. Upon completing the cross-examination of Mr. Kelly, the following exchange occurred:

MR. HANCOCK [attorney for property owners]: No further questions.

THE COURT: Redirect?

MR. FANNING [attorney for the State]: I have nothing further.

THE COURT: Thank you sir. You may stand down. Call your next witness.

MR. FANNING: No further witnesses, your Honor, and we would rest.

THE COURT: Anything in rebuttal, Mr. Hancock?

MR. HANCOCK: No, your Honor.

THE COURT: Okay, both parties have rested ...

After this exchange, the Court recessed at 3:20 p.m. in order to have a jury instruction conference. Upon reconvening the next day at 9:00 a.m., Mr. Hancock moved the court to reopen the case in an attempt to rebut the testimony of Mr. Kelly. After hearing argument from both attorneys, the trial court stated:

THE COURT: Thank you. Counsel, it's the—I've tried to review my notes on the whole trial, the entire trial for that matter, and review the file here. It appears to the court that this was easily a matter of discovery in preparation for trial. I'm going to deny the motion to reopen. . . .

The property owners were given the opportunity to rebut the testimony of Mr. Kelley and declined. We hold that, in this case, it was not an abuse of discretion to deny the motion to reopen.

## II. JURY INSTRUCTIONS

While the appellants allege that Jury Instructions Nos. 6 & 7 dealing with the burden of proof are erroneous, they failed to request that these instructions be included in the clerk's record. Instead, they were attached as an appendix to appellant's opening brief. To be included in the record, jury instructions must be specifically requested in the notice of appeal. I.A.R. 25(e). We are bound by the record and cannot consider matters or materials not part of or contained therein. *State v. Hodges*, 103 Idaho 765, 653 P.2d 1177 (1982); *Neer v. Safeway Stores, Inc.*, 92 Idaho 361, 442 P.2d 771 (1968); *Baldwin v. Singer Sewing Mach. Co.*, 48 Idaho 596,

284 P. 1027 (1930); *King v. Seebeck*, 20 Idaho 223, 118 P. 292 (1911). Thus, we do not address the appellants' contentions.

## III. ADEQUACY OF JURY VERDICT

The appellants maintain that the jury verdict was contrary to the evidence. In an eminent domain case, the amount awarded can only be set aside if it is not supported by any evidence. *Coeur d'Alene Garbage v. Coeur d'Alene*, 114 Idaho 588, 759 P.2d 879 (1988). An appellate court of this state will not set aside an award that is within the range of estimates given by the various witnesses at trial. *Eagle Sewer Dist. v. Hormaechea*, 109 Idaho 418, 707 P.2d 1057 (Ct.App.1985). We will review the compensation given to each parcel separately.

*Parcel #1*

Parcel #1 was owned by the Ivan Talbot Family Trust. The jury awarded $150.00 as compensation for the taking. The State sought to condemn one-tenth (0.10) of an acre for the purpose of a temporary easement. No permanent taking was involved. The only evidence adduced at trial concerning this parcel came from the State's expert witness, Mr. Kelley. Mr. Kelly testified that the temporary easement was worth $150.00, as this was the minimum amount the State Department of Transportation would pay to get a signature on an instrument. Therefore, the jury's award is supported by the evidence and we will not disturb it.

*Parcel #2*

Parcel #2 was owned by the Lavern Talbot Family Trust. The State's taking involved a temporary easement of 4.15 acres and a permanent taking of 6.9 acres in fee simple. This taking also involved an injury to the home of Lavern Talbot. The jury awarded $4,302.00 for the temporary easement and the land taken in fee. The jury awarded $25,000.00 as damages to the remainder of the property, including the home.

The appellants' first expert witness, Mr. Blake Parker, did not perform an appraisal, but did perform an "analysis." He testified that the highest and best use of the property was for residential lots. He then opined that the property was worth between eight to twelve thousand dollars an acre.

The appellants' other expert witness, Mr. Gerold Fisher, also did not perform an appraisal of the property. He testified that the highest and best use of the property was for residential lots. He declined to give an opinion as to the worth of the property, but stated that he believed the damage to the home would be 25% to 30% of its fair market value.

Lavern Talbot testified that he paid $1,000.00 per acre for the property in 1981. He felt the property was worth $5,000.00. He testified that the home cost $150,000.00 to build. He testified that he would be "lucky" to get $80,000.00 for the home after the taking.

The State's expert witness performed an appraisal of the property. He testified that the highest and best use of this property was for a dwelling site and for dry agricultural land. He estimated the damage to the property to be $3,228.00. He did not expect any damage to the dwelling.

While the compensation awarded by the jury is closer to the figures produced by the State's expert, the verdict is within the ranges adduced at trial. There was no error.

*Parcel # 3*

■ Parcel # 3 was owned jointly by the Lavern Talbot Family Trust and the Ivan Talbot Family Trust. The State sought to take 5.77 acres as a temporary easement and 14.67 acres in fee simple. The jury award $8,489.00 for the property taken, including the temporary easement, and $1,420.00 as damages to the remainder.

Again, one of the appellant's expert witnesses, Mr. Blake Parker, testified that this property was worth between eight to twelve thousand dollars an acre. The appellant's other expert witness did not offer an opinion as to the value of the property.

Both experts testified that the highest and best use of this property was for residential lots but neither witness performed an actual appraisal of the property. The appellants testified that this property was worth $5,000.00 per acre.

The State's expert witness testified that the highest and best use for the property was dry agricultural land. He estimated the damage to be $2,404.00.

The jury's verdict is within these ranges presented at trial. The jury's verdict is supported by the evidence. There is no error.

## IV. ATTORNEY FEES

■ The appellants urge that the trial court abused its discretion in failing to award attorney fees. This Court has held that in eminent domain actions, the award of attorney fees is within the discretion of the trial court. *Ada Cty. Highway Dist. v. Acarrequi*, 105 Idaho 873, 673 P.2d 1067 (1983).

Citing *Acarrequi*, the appellants argue that in considering whether to award fees, a court should determine whether the condemnor made a timely offer of settlement of at least 90% of the ultimate jury verdict; whether it was made within a reasonable time after instituting the condemnation proceedings; and whether the condemnee voluntarily granted possession pending final resolution of the compensation issue. The appellant's aggregate the three separate pre-trial offers to settle in the amount of $16,950.00 and compare this to the aggregate jury award of $39,361.00 for the three parcels. Using these figures, the state's offer was 43% of the ultimate jury award. In conjunction with the fact that the Talbots voluntarily granted early possession, the appellants urge that attorney fees should have been granted.

In *Acarrequi*, this Court held "that the award of reasonable attorneys' fees to the condemnee in an eminent domain proceeding is a matter for the trial court's guided discretion...." *Id.*, 105 Idaho at 877, 673 P.2d at 1071. This Court then delineated various guidelines to assist in determining

whether to award attorney fees. It must be noted that these guidelines "are matters for consideration and not rigid guidelines within which a trial court is required to operate." *Id.*, 105 Idaho at 877, 673 P.2d at 1071. The *Acarrequi* Court then remanded the case to the district court to determine if the Acarrequis were the prevailing parties. The determination of the prevailing party is governed by I.R.C.P. 54(d)(1)(B) which provides:

> Prevailing Party. In determining which party to an action is a prevailing party and entitled to costs, the trial court shall in its sound discretion consider the final judgment or result of the action in relation to the relief sought by the respective parties, whether there were multiple claims, multiple issues, counterclaims, third party claims, cross-claims, or other multiple or cross issues between the parties, and the extent to which each party prevailed upon each of such issue or claims. The trial court in its sound discretion may determine that a party to an action prevailed in part and did not prevail in part, and upon so finding may apportion the costs between and among the parties in a fair and equitable manner after considering all of the issues and claims involved in the action and the resultant judgment or judgments obtained.

Therefore, in addition to considering the *Acarrequi* guidelines, the trial court must apply I.R.C.P. 54(d)(1)(B) to determine the prevailing party. In its memorandum decision, the district court stated:

> The Court has thoroughly reviewed the files herein, and the trial in this matter. The Court is unable to declare defendants the "prevailing party" within the meaning of I.R.C.P. Rule 54(d)(1)(B). Whether you view the three cases as separate actions, as viewed by the State, or as one action, as viewed by defendants, the recovery of the defendants, although exceeding the pre-trial offers from plaintiff, are substantially lower than the claims and demands of the defendants and the jury obviously rejected the claimed highest and best use proposed by defendants. A timely offer of

settlement has been made by plaintiff, and there is no evidence of any counteroffer by defendants. Defendants have voluntarily granted possession of the property to plaintiff pending resolution of these matters, however, there is no controversy over the public use and necessity. There has been no modification of plans or designs. Although defendants individually estimated property values and damages based upon their theory of highest and best use, they presented no expert testimony to controvert that of the State's expert appraiser. The jury obviously found the State's evidence to be entitled to the greater weight.

From this discussion, it is apparent that the district court considered the guidelines enunciated in *Acarrequi* and also applied I.R.C.P. 54(d)(1)(B) in reaching its determination that the appellants were not the prevailing parties. In making this determination, the district court correctly weighed the result in relation to the relief sought. *Stewart v. Rice*, 120 Idaho 504, 817 P.2d 170 (1991). We cannot say the district court abused its discretion. Therefore, we affirm the denial of attorney fees.

Both parties have requested attorney fees on appeal. We decline to award attorney fees.

### CONCLUSION

We hold the district court did not abuse its discretion in failing to reopen the case. We affirm the compensation awarded by the jury and the denial of attorney fees.

Costs to respondents.

BAKES, C.J., and JOHNSON, J., concur.

BISTLINE, Justice, dissenting in part and concurring in part.

Justice McDevitt's opinion gains my concurrence, other than that I now concur in the dissenting opinion of Justice Boyle on the issue of attorney fees. Because of the importance of that issue, and the prospect of Justice McDevitt's views in respect thereto becoming precedential case law, pause is taken to add my own views.

The *Acarrequi*[1] opinion was authored by Justice Shepard,[2] and it was not a unanimous decision of the Court. Unnoticed in the opinions of Justice McDevitt and Justice Boyle are the two dissenting opinions in *Acarrequi*, one authored by Justice Bakes, and the other was mine. Justice Shepard, in a style unique to him, without doubt was solely responsible for the content of his opinion. After pointing out that Rule 54(e)(1) was inapplicable by reason of its effective date, he broke new ground:

> [W]e deem it necessary to adopt a new standard governing an award of both attorneys' fees and costs, only as it relates to a condemnation proceeding. We reverse the trial court's award of attorneys' fees and costs as not in compliance with the proper standard (not known until today) and remand for the sole purpose of determination of attorneys' fees and costs in accordance with the standard set forth *infra.*

According to the great weight of authority, attorneys' fees and other expenses are not recoverable in a condemnation proceeding except as authorized by statute. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Dohany v. Rogers,* 281 U.S. 362, 50 S.Ct. 299, 74 L.Ed. 904 (1930); *Petersen v. Port of Seattle,* 94 Wash.2d 479, 618 P.2d 67 (1980); *Richmond Elks Hall Assn. v. Richmond Redevelopment,* 561 F.2d 1327 (9th Cir.1977); *County of Los Angeles v. Ortiz,* 6 Cal.3d 141, 98 Cal. Rptr. 454, 490 P.2d 1142 (1971); *Leadville Water Co. v. Parkville Water District,* 164 Colo. 362, 436 P.2d 659 (1967); *Bassett v. Swenson,* 51 Idaho 256, 5 P.2d 722 (1931). As is stated in 4A Nichols on Eminent Domain § 14.24[4] (3d ed. 1981):

> 'It has been held that the acquisition of property by eminent domain does not involve a taking of the legal services which are needed in order to establish a claim for compensation. Unless provision is made therefor by statute, a claimant is not entitled to reimbursement either for loss of time consumed in prosecuting his claim or for counsel fees. Attorney's fees are not generally considered payable under statutory provisions for costs, expenses or just compensation. Nevertheless, judicial opinion has occasionally questioned whether an owner has been made whole so far as money is a measure of compensation, if he is denied recovery of attorney's fees necessarily expended by him in the trial of a condemnation proceeding.

> 'Where statutory provision is made for the inclusion of counsel fees in the just compensation to which an owner is entitled when his property is taken by eminent domain such fees may be treated like any other element of damage involved in such a case. Such statute is amply justified by the equities of the situation. As one court has stated the case:

> "The constitution requires that private property shall not be taken for public use, except on the payment of just compensation, and a man who is forced into court where he owes no obligation to the party moving against him, cannot be said to have received just compensation for his property if he is put to an expense appreciably important to establish the value of his property. He does not want to sell; the property is taken from him through the exercise of the high powers of the state, and the spirit of the constitution clearly requires that he shall not be compelled to part with what belongs to him without the payment, not alone of the abstract value of the property, but of all the necessary expenses incurred in fixing that

1. *Ada County Highway District v. Acarrequi,* 105 Idaho 873, 673 P.2d 1067 (1983).

2. Prior to becoming a Justice of the Supreme Court in January 1968, Justice Shepard had also served in the Idaho legislature, and as the Attorney for the State of Idaho. Needless to say, he was quite conversant with highway changes and consequent condemnation actions. Justice Bakes was equally conversant with that area of the law, but primarily in the federal courts where he represented the government in its condemnation cases.

value." [In re Board of Rapid Transit Comrs., 128 A.D. 103, 112 N.Y.S. 619 (1908).]' (Footnotes omitted.)

I.C. § 7–718, dealing with eminent domain, provides: 'Costs may be allowed or not, and, if allowed, may be apportioned between the parties on the same or adverse sides in the discretion of the court.' As interpreted, that statute requires the condemnor to pay all costs. Bassett v. Swenson, supra; Rawson–Works Lumber Co. v. Richardson, 26 Idaho 37, 141 P. 74 (1914).

We therefore hold that as the trial court determined, attorneys' fees and costs are allowable, in eminent domain proceedings, under I.R.C.P. 54(d)(1). However, we disagree with the trial court's conclusion that such fees and costs are mandatory as within the definition of just compensation.

We note that the rule in most civil cases is that fees and costs are awardable only to the prevailing party, I.C. § 12–121, as determined by the standards of I.R.C.P. 54(d)(1)(B). As to attorneys' fees, I.R.C.P. 54(e)(1) is an explanatory gloss on I.C. § 12–121 and provides that 'attorney fees under section 12–121, Idaho Code, may be awarded by the court only when it finds, from the facts presented to it, that the case was brought, pursued or defended frivolously, unreasonably or without foundation.' Hence, assuming Rule 54(e)(1) was applicable to the present case, and under the case law until today, attorneys' fees were improperly awarded in the absence of a finding of frivolity, unreasonableness or lack of foundation.

Rule 54(e)(1) is not applicable to the instant case, which was filed prior to March 1, 1979, the effective date of the rule. Nampa v. McGee, 104 Idaho 63, 656 P.2d 124 (1982); T–Craft Aero Club, Inc. v. Blough, 102 Idaho 833, 642 P.2d 70 (1982); Haskin v. Glass, 102 Idaho 785, 640 P.2d 1186 (1982); Rickel v. Board of Barber Examiners, 102 Idaho 260, 629 P.2d 656 (1981). See also Quincy v. Joint School District No. 41, Benewah County, 102 Idaho 764, 640 P.2d 304 (1981). Nevertheless, putting aside the time parameters which constrain the application or non-application of I.R.C.P. 54(e)(1) to the instant action, we adopt a new view and hold that, in condemnation actions, attorneys' fees may be awarded to the condemnee without a showing and finding that the action was brought and pursued 'frivolously, unreasonably or without foundation.'

It is seldom that a governmental entity can be shown to have initiated a condemnation action frivolously, unreasonably or without foundation. Any such unreasonableness would undoubtedly be raised by the condemnee at an early stage of the proceedings during the public use and necessity hearing. Hence, any opportunity for the condemnee to prevail on the issue of attorneys' fees would appear to lie only in the condemnor's failure to make a reasonable offer of settlement, which inaction forces the condemnee to trial with the resultant expenses for attorneys' fees.

On the other hand, the condemnee, as was emphasized by the trial court here, has done nothing to bring the action upon himself except to have the bad (or good) fortune of owning property which the governmental entity has chosen to expropriate.

. . . .

We now hold that an award of reasonable attorneys' fees to the condemnee in an eminent domain proceeding is a matter for the trial court's guided discretion and, as in other areas of the law, such award will be overturned only upon a showing of abuse. We further hold that the condemnee's costs may be awarded under I.R.C.P. 54(d)(1)(C) or 54(d)(1)(D). City of Aberdeen v. Lutgen, 303 N.W.2d 372 (S.D.1981); State v. Van Willet, 389 So.2d 1346 (La.App.1980); Hayden v. Board of County Commissioners, 41 Colo.App. 102, 580 P.2d 830 (1978); Division of Administration v. Denmark, 354 So.2d 100 (Fla.App.1978); State v. Siler, 79 Wash.2d 789, 489 P.2d 921 (1971); In re Condemnation of Certain Land, 254 Iowa 769, 119 N.W.2d 187 (1963); State v. Westover Co., 140 Cal.

App.2d 447, 295 P.2d 96 (1956). *See generally* 4A Nichols on Eminent Domain § 14.24[4] (3d ed. 1981), at pp. 14–162—14–615.[3]

Since we have held that an award of attorneys' fees and costs to a condemnee in a condemnation proceeding lies within the discretion of the trial court, it is appropriate that we delineate some factors which the trial court should consider in exercising that discretion. We emphasize that these factors are matters for consideration and not rigid guidelines within which a trial court is required to operate. Since many of the matters would probably not be contained in the actual trial record, we urge trial courts to set forth their basis of any such awards, to the end that if an appeal results, this Court can give meaningful consideration to the trial court's exercise of discretion.

Except in the most extreme and unlikely situation, we cannot envision an award of attorneys' fees and costs to a condemnor. Given the vagaries of jury verdicts in condemnation actions, the ultimate jury award is a far from perfect point of departure in attempting to gauge the reasonableness of the positions of the parties, relative to settlement, prior to trial. However, given the entire theory of eminent domain, i.e., that a jury will determine the just compensation to be awarded the condemnee, we must, it seems, assume that a jury verdict at least approximates the fair market value of the property taken and the damages which will result to the remainder. We are convinced that such is at least a more reliable indicator than the wide and wild variations in value which will be testified to in any given case by the expert witnesses brought forward by each party. As a point of beginning, we postulate that a jury in a condemnation action, attempting to choose among highly divergent evidence as to value, can only be expected to arrive at the 'real' just compensation to which a condemnee is entitled within a margin of error of plus or minus ten per cent. Hence, we would deem that in considering the award of attorneys' fees to a condemnee, a condemnor should have reasonably made a timely offer of settlement of at least 90 per cent of the ultimate jury verdict. We also deem that an offer would not be timely if made on the courthouse steps an hour prior to trial. An offer should be made within a reasonable period after the institution of the action, to relieve the condemnee not only of the expense but of the time, inconvenience and apprehension involved in such litigation, and also to eliminate the cloud which may hang over the condemnee's title to the property. Other factors which may be considered by the trial court are any controverting of the public use and necessity allegations; the outcome of any hearing thereon and, as here, any modification in the plans or design of the condemnor's project resulting from the condemnee's challenge; and whether the condemnee voluntarily granted possession of the property pending resolution of the just compensation issue. *See generally Division of Administration v. Denmark,* 354 So.2d 100 (Fla.App.1978); *City of Bismarck v. Thom,* 261 N.W.2d 640 (N.D.1977); *State v. Siler,* 79 Wash.2d 789, 489 P.2d 921 (1971); 4A Nichols on Eminent Domain § 14.24[4] (3d ed. 1981). As to the amount of attorneys' fees awardable, we deem the criteria outlined in I.R.C.P. 54(e)(3) to be appropriate in condemnation, as in all other civil cases. We caution that the court should not automatically adopt any contingent fee or contractual arrangement,. but rather the fee awarded may be more or less than that provided in the lawyer-client contract. *Blasdel v. Montana Power Co.,* 196

---

**3.** At this time I confess to no knowledge that any of the other four members of the Court read the cases which were cited in support of this dramatic evolution of the new rule. The Court as presently constituted is considerably more collegial now than in earlier days. Should this case resurface, or a similar case enter the system, it would be expected that involved counsel might choose to examine the citations. As the matter now stands, the *Acarrequi* holdings are entitled to the benefit of *stare decisis.*

Mont. 417, 640 P.2d 889 (1982); *City of Bismarck v. Thom, supra; Carmichael v. Iowa State Highway Comn,* 219 N.W.2d 658 (Iowa 1974).

In conclusion, we hold that the trial court here erred in finding the Acarrequis, solely by virtue of their condemnee status, absolutely entitled to attorneys' fees and costs. On remand, the trial court is instructed to determine whether plaintiffs Acarrequis prevailed, whether Acarrequis should be awarded attorneys' fees and costs, and if so, then the amount of those attorneys' fees and costs. The cause is reversed and remanded for further proceedings, including, in the discretion of the trial court, a hearing and additional taking of evidence. No costs or attorneys' fees to either party on this appeal.

*Acarrequi,* 105 Idaho at 875–78, 673 P.2d at 1069–72.

Justices Donaldson and Huntley concurred. Justice Bakes in dissent wrote:

I would affirm the trial court's award of attorney fees. As the court's quotation from 4A Nichols on Eminent Domain, § 14.24[4], acknowledges, attorney fees are not allowable in condemnation proceedings in the absence of statute authorizing them. I.C. § 12–121 is just such a statute and is applicable in this case. This case was filed prior to March 1, 1979, and therefore, as the majority correctly points out, I.R.C.P. 54(c) is not applicable. Therefore, there is no need for this Court to 'adopt a new position' when the legislature has expressed its view regarding attorney fees—the only view, in my opinion, that counts.

*Acarrequi,* 105 Idaho at 878–79, 673 P.2d at 1072–73.

My dissenting opinion was as follows:

I would affirm the judgment allowing attorney's fees. The ruling of Judge Smith, a ruling which was long overdue in this area of the law, is highly commendable. Touching lightly upon the views of Justice Bakes, who would affirm on the technicality that the case was filed before March 1, 1979,[1] I disagree with his view that I.C. § 12–121 is here

applicable. Our opinion in *Rueth v. State,* 100 Idaho 203, 596 P.2d 75 (1979), made it clear that, in reaffirming *Flandro v. Seddon,* 94 Idaho 940, 500 P.2d 841 (1972), a condemnation proceeding is an action provided for by the Idaho Constitution, and not the legislature. 100 Idaho at 222, 596 P.2d 75. Although the legislature was authorized to and has provided the procedural guidelines, it is only the Court which will interpret the meaning of just compensation as required by Art. 1, § 14.

'Just compensation' means the full monetary equivalent of the property taken. *United States v. Reynolds,* 397 U.S. 14, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970). That definition needs no further discussion. Under the Idaho constitutional provision, the condemnor is obliged to pay the landowner the full fair market value of the property as a prerequisite to gaining title. Nothing less will suffice. Initially it should be up to the condemnor to ascertain that fair market value, and thereupon forthwithly and forthrightly offer that ascertained value to the landowner.[2] It is not a market overt situation. Unlike an ordinary real estate transaction, there is no room for the condemnor to offer less than the ascertained value, and thereafter bargain and haggle. The condemnor, constitutionally vested with this awesome power to acquire property which is not for sale, must fairly and openly deal with the landowner. In that manner most condemnation actions should not be thrown into litigation. For the condemnor, the cost of appraising the property is thus an ordinary administrative cost of the desired acquisition. The landowner who is not satisfied with the offer may, in turn, seek out, at his own expense, legal and appraisal advice upon which he will rely in attempting to negotiate a settlement.

Where litigation ensues, and the landowner prevails and obtains more than was offered, prima facie the offer was too low and was not an offer of just compensation. In that event the landowner will retain that which the jury (or court in a non-jury case) has found to be

just compensation, and, in order that it be the full monetary equivalent of the property taken, the landowner must not be penalized by having to pay out of his recovery the expenses, including attorney's fees and expert witnesses, to which he has been put. That is fulfillment of the constitutional provision, and that should be our holding today. By so holding, this Court would properly fill a gap which has been long vacant, too long. Perhaps, had the legislature taken some action, the constitutional validity of its thus defining and assuring just compensation would have gone unchallenged. But it did not. The Oregon legislature has done so. There the landowner will be awarded attorney's fees and other expenses if the jury assessed just compensation in an amount which 'exceeds the highest written offer in settlement submitted by condemnor ... at least 30 days prior to commencement of said trial; ....' O.R.S. 35.346(2)(a). Moreover, even if the landowner does not obtain a verdict exceeding the condemnor's highest offer, he may still recover his attorney's fees and expenses.

> '(b) If the court finds that the first written offer made by condemner to defendant in settlement prior to filing of the action did not constitute a good faith offer of an amount reasonably believed by condemner to be just compensation.' O.R.S. 35.346(b)

Thus, it is seen that the Oregon legislature has statutorily required fair dealing and provided for attorney's fees as did Judge Smith in the first instance, and as I now declare well in order.

The Montana legislature has addressed the proposition:

> 'In the event of litigation and when the private property owner prevails by receiving an award in excess of the final offer of the condemnor, the court shall award necessary expenses of litigation to the condemnee. R.C.M. 70–30405(2)

> '(1) Necessary expenses of litigation as authored by 70–30–305 mean reasonable and *necessary attorney fees,* expert witness fees, exhibit costs, and court costs.' R.C.M. 70–30–306(1) (emphasis added).

Whatever may be the authority of the Oregon and Montana legislatures to so provide is not necessary of further inquiry, not where it is well established in Idaho that our condemnation proceedings are not creatures of legislative creation, but rather constitutional, absolutely *sui generis.* We merely look to Oregon and Montana to ascertain what the people of those states believe to be fair. Our legislature without doubt recognizes that it is this Court which ultimately will pass upon the meaning of constitutional just compensation, and the legislature has maintained a hands-off approach.

The opinion authored by Justice Shepard offends notions of fair play in reversing 'the trial court's award of attorneys' fees as not in compliance with the proper standard (not known until today) and remand for the sole purpose of determination of attorneys' fees in accordance with the standard set forth *infra.*' It might be an appropriate ruling if it were somehow demonstrated how a district judge could err in failing to apply a standard which had not yet been divined. And it would be an appropriate ruling if the district judge had denied attorney's fees, and the landowner on an appeal taken by him was responsible for the creation of new standards. Such a landowner would only be getting the benefit of his own product. But that is not this case. The Court today creates a new standard, and then, in violation of all known principles of retroactivity, applies it to a ruling made almost three years ago!!

---

1. Except for the technicality, prior cases on the subject suggest that Justice Bakes would not allow a landowner any attorney fees whatever unless it could be established that the condemnor was guilty of frivolously condemning. I agree heartily with Justice Shepard's discussion of that issue. I also again point out that Justice Bakes has continued to be of the view that attorney's fees may be awarded

under the guise of punitive damages-which was, until *Cheney v. Palos Verdes*, 104 Idaho 897, 665 P.2d 661 (1983), certainly 'in the absence of statute authorizing them.'

2. The Reply Brief of the Highway District candidly recognizes this precept:

'However, an eminent domain action is somewhat different from the ordinary civil litigation in this respect, since there is a statutory obligation on the part of the condemning authority *to bargain in good faith.'*

Appellant's Reply Brief, p. 10.

*Acarrequi,* 105 Idaho at 879–80, 673 P.2d at 1073–74 (emphasis in original and added).

BOYLE, Justice, concurring in part and dissenting in part.

I fully concur in Parts I, II and III of the majority opinion. However, I am unable to agree with Part IV relating to attorney fees, and accordingly I respectfully dissent.

After reviewing *Stewart v. Rice*, 120 Idaho 504, 817 P.2d 170 (1991), *Ada County Highway Dist. v. Acarrequi*, 105 Idaho 873, 673 P.2d 1067 (1983), and I.R.C.P. 54, relied upon in Part IV of the majority opinion, I am satisfied that the analysis followed by the Court is incorrect. In my view, the fundamental error of Part IV of the majority opinion is that it compares the amount sought by the property owners in this condemnation proceeding with the amount actually awarded. Because the amount sought was significantly higher than the amount awarded by the jury, the opinion essentially concludes that the property owner was not the prevailing party.

This analysis is directly contrary to the method suggested by the Court in *Acarrequi*. In that case the relevant comparison was not between the "result in relation to the relief sought," as asserted by the majority, *ante* at 829, 820 P.2d at 699, but between the result and the *offer* of the government. In *Acarrequi,* we stated:

As a point of beginning, we postulate that a jury in a condemnation action, attempting to choose among highly divergent evidence as to value, can only be expected to arrive at the "real" just compensation to which a condemnee is entitled within a margin of error of plus or minus ten per cent. Hence, we would deem that in considering the award of attorneys' fees to a condemnee, a condemnor should have reasonably made a timely *offer* of settlement of at least 90 per cent of the ultimate *jury verdict.*

*Acarrequi,* 105 Idaho at 878, 673 P.2d at 1072 (emphasis added). The reason the actual award should be compared to the government's offer rather than to the amount sought by the property owner is that it is the unreasonably low government offer which forces a condemnee to seek relief in court. As we stated in *Acarrequi*, "any opportunity for the condemnee to prevail on the issue of attorneys' fees would appear to lie *only in the condemnor's failure to make a reasonable offer of settlement,* which inaction forces the condemnee to trial with the resultant expenses for attorneys' fees." *Acarrequi*, 105 Idaho at 877, 673 P.2d at 1071 (emphasis added). This is the comparison set forth in the holding of *Acarrequi* which the majority should follow today.

In holding that the relevant comparison is between the result and the relief sought, the majority also relies on I.R.C.P. 54 and *Stewart v. Rice*. However, this reliance is misplaced. By analogy to Rule 54 of the Federal Rules of Civil Procedure, *Acarrequi* makes clear that the normal prevailing party analysis under the Idaho Rules of Civil Procedure should not apply in condemnation cases. In *Acarrequi* we stated:

The general federal rule as to costs [Fed. R.Civ.P. Rule 54] does not apply to condemnation proceedings. Since the condemnor is normally the prevailing party and since [the government] should not recover [its] costs against the property owner, the general rule, which provides that costs shall go to the prevailing party, has been rendered inapplicable. The effect of the new rule is that *costs are to be awarded in accordance with the law that has developed in condemnation cases.*

*Acarrequi,* 105 Idaho at 877, 673 P.2d at 1071 (quoting 6A Julius L. Sackman, *Nichols' the Law of Eminent Domain* § 27.6 (3d ed. 1981) (emphasis added). The reason the normal analysis under Rule 54 is inapplicable is that the issue in a usual condemnation case is not whether the government is entitled to condemn the property but whether the amount offered meets the constitutional requirement of just compensation. Because the relevant dispute concerns the value to be awarded the property owner, *Acarrequi* outlined the comparison that should be used to determine a prevailing party. While we indicated that our 90 percent rule was not a "rigid guideline[ ]," *Acarrequi,* 105 Idaho at 877, 673 P.2d at 1071, we meant only that the percentage used was flexible because we merely "postulated" that the jury would determine the fair value of the property within a ten percent margin of error. *See Acarrequi,* 105 Idaho at 878, 673 P.2d at 1072. While an offer within 80 percent of the jury award might be close enough for a trial court to disallow attorney fees depending on whether the other factors enumerated in *Acarrequi* are present, *see Acarrequi,* 105 Idaho at 878, 673 P.2d at 1072, we surely did not hold that the determination of a prevailing party was to be made by a comparison between the jury award with the amount sought by the property owner. Such a comparison would contradict the letter and spirit of our holding. As we indicated in *Acarrequi,*

> The constitution requires that private property shall not be taken for public use, except on the payment of just compensation, and a man who is forced into court where he owes no obligation to the party moving against him, cannot be said to have received just compensation for his property if he is put to an expense appreciably important to establish the value of his property. He does not want to sell; the property is taken from him through the exercise of the high powers of the state, and the spirit of the consti-

tution clearly requires that he shall not be compelled to part with what belongs to him without the payment, not alone of the abstract value of the property, but of all the necessary expenses incurred in fixing its value.

*Acarrequi,* 105 Idaho at 876, 673 P.2d at 1070 (quoting *In re Board of Rapid Transit Comm'rs,* 128 A.D. 103, 112 N.Y.S. 619 (1908) (footnotes omitted)).

In setting forth "a new view" for determining a prevailing party in a condemnation case, *see Acarrequi,* 105 Idaho at 876, 673 P.2d at 1070, it is clear that the analysis of *Stewart v. Rice* is inapplicable. As we said in *Acarrequi,* only "the law that has developed in condemnation cases" should be used to determine a prevailing party. *See Acarrequi,* 105 Idaho at 877, 673 P.2d at 1071 (quoting 6A Julius A. Sackman, *Nichols' the Law of Eminent Domain* § 27.6 (3d ed. 1981)). Because *Stewart v. Rice* is a personal injury case, it is inapplicable to these condemnation proceedings.

Because of what I perceive to be an incorrect analysis by the majority opinion, we are left with complete inequity between the holding of this case and the holding of *Acarrequi.* In that case, the facts indicate that the government made an offer of $40,000 and the jury ultimately awarded the condemnee $48,000. *Acarrequi,* 105 Idaho at 874, 673 P.2d at 1068. There, the Court compared these two numbers, found the offer to be less than the jury award by more than 10 percent,[4] and approved the award of attorney fees. Here, the government offered less than $17,000 and the jury awarded the property owner approximately $40,000. Obviously, the same calculation used in *Acarrequi* yields a much greater shortfall between the government's offer and the jury award in the present case.[5] Therefore, the same result should follow in both cases. Nevertheless, by comparing the actual award with the relief sought, rather than with the government's meager

---

**4.**  $48,000 × 10% = $4,800
$48,000 − $40,000 = $8,000
$8,000 > $4,800

**5.**  $40,000 × 10% = $4,000
$40,000 − $17,000 = $23,000
$23,000 > $4,000

offer, the majority concludes that no attorney fees should be awarded.

The majority opinion emphasizes that attorney fees are within the discretion of the district court. I agree, however, it is well settled that a "trial court abuses its discretion when it fails or refuses to properly apply the law." *Kirkham v. 4.6 Acres of Land*, 100 Idaho 781, 785, 605 P.2d 959, 963 (1980). Recognizing this, the majority indicates that attorney fees are "a matter for the trial court's *guided* discretion...." *Ante* at 829, 820 P.2d at 699 (quoting *Acarrequi*, 105 Idaho at 876, 673 P.2d at 1071). Because *Acarrequi* gave *"guidelines,"* *ante* at 829, 820 P.2d at 699, that call for a comparison between the government's offer and the jury's award to determine a prevailing party, in my view the trial court abused its discretion by failing to "properly apply the law" and award attorney fees to the property owner. While there is discretion as to the percentage used in determining a prevailing party, "the law that has developed in our condemnation cases" is that the government's offer and the jury award should be used to determine who is the prevailing party. Because the district court erred in its comparison, the judgment should be reversed on this issue.

Accordingly, I respectfully dissent as to Part IV of the majority opinion.