[No. 60772-9.   En Banc.   March 17, 1994.]

THE PORT OF GRAYS HARBOR, *Respondent*, v. CITIFOR, INC., *Appellant*.

*Ragen & Cromwell, P.S.,* by *Laurie N. Cromwell* and *James J. Ragen,* for appellant.

*Ingram, Zelasko & Goodwin,* by *Ernest M. Ingram; Preston Thorgrimson Shidler Gates & Ellis,* by *Susan Delanty Jones* and *Adam W. Gravley,* for respondent.

SMITH, J. — The Court of Appeals, Division Two, certified to this court for review a decision of the Grays Harbor County Superior Court which granted partial summary judgment to respondent Port of Grays Harbor and denied the cross motion of appellant Citifor, Inc., for partial summary judgment on its claim for reimbursement of reasonable attorney and expert witness fees. We affirm the Superior Court.

## STATEMENT OF FACTS

This case arises out of eminent domain proceedings brought by the Port of Grays Harbor, a port district under RCW 53.04, against several parties for condemnation of a portion of a marine terminal owned by the bankruptcy estate of Roderick Timber Company (RTC).

The parties in interest in this action include respondent Steven R. Levy, attorney and trustee of the bankruptcy estate of RTC; respondents Rainier National Bank (Rainier)[1] and Citifor, Inc., (Citifor), who hold real property security interests in the property; respondent Washington Department of Natural Resources, which is lessor of the Harbor Area Lease of the tidelands beneath the marine terminal;[2] and respondents Phillip E. and Sonja J. Roderick,

---

[1]Rainier National Bank is now Security Pacific Bank. On June 29, 1990, Rainier, as a named respondent, filed its motion for award of attorney's fees and costs pursuant to RCW 8.12 and 8.25.075. See Clerk's Papers, at 310. The Port and Rainier were able to reach a compromise on the requested fees and costs. On August 7, 1990, the Grays Harbor County Superior Court, the Honorable Michael G. Spencer, ordered the amount agreed upon to be paid, and upon payment, Rainier was dismissed from the lawsuit. See Clerk's Papers, at 311.

[2]The Washington Department of Natural Resources, represented by John G. Hennen, senior assistant attorney general, has not filed an affidavit or memorandum in support of its position in this matter.

who stand as derivative owners of corporate assets remaining after payment of creditors in the bankruptcy estate.[3] Respondents Mary H. and Alexander H. Snell have been dismissed from this action.[4]

The marina property,[5] located in the Junction City area of the City of Aberdeen, Grays Harbor County, was owned and operated as a marine log export facility by Roderick Timber Company from the 1970's until May 1986.[6]

In March 1985, Citifor, a Washington corporation, entered into an agreement with RTC to purchase 100 million board feet of logs. Citifor advanced $5 million to RTC and, as part of that transaction, received a second deed of trust on RTC's wharf and export facility in Junction City.[7]

Citifor's claim against the RTC bankruptcy estate ranked second to Rainier's claim. Rainier held the first deed of trust securing $2 million. Since November 1987, Citifor has been the party most affected by the Port's efforts to condemn the property. If the Port had been successful in obtaining the property at its valuation, Citifor would have recovered little or nothing for its second position.[8]

---

[3]Clerk's Papers, at 84. The Rodericks were joined as additional respondents by an order entered November 13, 1989. The Port's motion to dismiss the Rodericks as parties was denied. See Clerk's Papers, at 109. The Rodericks and respondents Steven Levy, Rainier, and Citifor all have a common interest: determination of the fair market value of the condemned property. To avoid duplication of effort, Citifor and the Rodericks were given primary responsibility for preparing respondents' trial presentation. See Clerk's Papers, at 110. Citifor and the Rodericks engaged real estate appraisers who shared information as a cost saving in preparation of their respective appraisals. See Clerk's Papers, at 112.

[4]Clerk's Papers, at 20.

[5]The property is commonly known as the Marine Terminal (dock) portion of the Roderick property and includes an adjoining 35-acre land parcel. Clerk's Papers, at 10.

[6]See Civil Appeal Statement, at 3.

[7]Brief of Appellant, at 4. See also affidavit of James J. Ragen in support of award of attorney's fees and costs; Clerk's Papers, at 152-62. There is no dispute that Citifor has a real property ownership interest in the RTC property.

[8]Clerk's Papers, at 153.

In May 1986, Rainier filed an action in the Grays Harbor County Superior Court against RTC to foreclose on the property.[9] On May 16, 1986, RTC filed for Chapter 11 protection in the United States Bankruptcy Court for the Western District of Washington before the Honorable Robert W. Skidmore and stayed the foreclosure action.[10] The bankruptcy proceeding was later converted to a Chapter 7 liquidation.[11]

The Port of Grays Harbor (Port) became interested in acquiring the property and undertook studies to determine its status and condition.[12] The Port contracted with Scheuler, McKown & Keenan,[13] GeoEngineers and ABAM Engineers, Inc. to conduct the studies.[14]

On November 24, 1987, the Port Commission passed resolution number 2086 amending the Comprehensive Scheme of Harbor Improvements. The resolution permitted the Port to acquire by purchase or condemnation all the property formerly owned by RTC.[15] The Port offered Steven R. Levy, RTC bankruptcy trustee, $2.25 million for the

---

[9]Rainier was a creditor of RTC, holding the first lien on the property by mortgage, deed of trust, and assignment of lease. Clerk's Papers, at 288.

[10]Clerk's Papers, at 288.

[11]Brief of Appellant, at 4-5.

[12]The Port viewed the RTC property as an appropriate choice because of its under-utilization as a marine terminal, unlike the other privately owned marine terminal facilities on the harbor. An added advantage of the property was its railroad right of way connecting to the Burlington Northern line, allowing for rail transport of commodities directly to and from the Port's terminals. Clerk's Papers, at 26, 64.

[13]The property was appraised at $3.33 million, with the caveat that suspected soil contamination could impact its market value. Clerk's Papers, at 6.

[14]GeoEngineers completed its report in August 1987. The report revealed there was hydrocarbon contamination in the soil and speculated on the probability of major contamination of a portion of the property. See Clerk's Papers, at 6. In August 1987, ABAM Engineers, Inc., concluded that the Port could accomplish the necessary repairs, although the dock needed repairs. See Clerk's Papers, at 64.

[15]Clerk's Papers, at 64, 271.

property. On December 16, 1987, the RTC bankruptcy trustee declined the Port's offer.[16]

On January 4, 1988, the Port filed a motion for order granting relief from stay in the United States Bankruptcy Court for the Western District of Washington at Tacoma.[17] It argued that relief from the stay was necessary because the United States Army Corps of Engineers had set a deadline[18] for the Port's acquisition of the RTC facility, and claimed that acquisition of the property was essential to development of the Grays Harbor Navigation Improvement Project, otherwise known as the Deeper Draft Project.[19]

The Port then offered to lease the property from the RTC bankruptcy estate.[20] On February 4, 1988, the bankruptcy trustee, Steven R. Levy, filed a notice for hearing that the Port had proposed to lease a portion of the property beginning February 16, 1988.[21] Throughout the month of February 1988, both the Port and Citifor submitted proposed leases and negotiated with the RTC trustee for lease of the property.[22] As part of the lease proposals, both Citifor and the Port offered to make substantial improvements to the

---

[16]Clerk's Papers, at 329. See December 16, 1987, letter to Hank Soike from Steven R. Levy; Cromwell affidavit exhibit 2.

[17]Clerk's Papers, at 329.

[18]The Army Corps of Engineers set September 30, 1988, as the deadline for acquisition of the property by the Port. Clerk's Papers, at 375.

[19]The Deeper Draft Project was a major channel upgrade effort by the Corps of Engineers, with the Port as the local sponsor. Any further delay beyond the deadline established by the Corps of Engineers would jeopardize the Port's efforts to complete the Deeper Draft Project. Clerk's Papers, at 376; see also Brief of Appellant, at 12.

[20]The record does not indicate when the Port became interested in leasing the harbor property.

[21]Brief of Appellant, at 13. See also Clerk's Papers, at 159.

[22]In its brief Citifor claimed it had to offer to leave the property in order to "protect and preserve" its value. Brief of Appellant, at 13. Although both proposed leases were otherwise essentially similar, Citifor offered $10,000 per month, while the Port offered $7,000. Clerk's Papers, at 410-11.

property and both offered to engage experts to perform a site characterization study of the entire RTC property.[23]

On March 1, 1988, the United States Bankruptcy Court, the Honorable Robert W. Skidmore, signed an order declaring it in the best interests of the bankruptcy estate to lease the property to Citifor.[24] On March 14, 1988, the Bankruptcy Court granted the Port's motion for an order granting relief from stay under 11 U.S.C. § 362(d)(1) for cause, *conditioned upon the Port's conducting a site characterization of the entire RTC property.*[25] After the Port obtained relief from the stay, it was able to proceed with its condemnation action against the property. However, rather than immediately proceeding with an eminent domain action, the Port made a second offer to the bankruptcy trustee to purchase the property.[26] On August 25, 1988, the Port offered $3.33 million[27] on the condition "that the property [was] in good operating condition and there ha[d] been no contamination of the property by hazardous material."[28] On August 31, 1988, the bankruptcy trustee rejected the Port's second offer, claiming he could not make the warranties requested by the Port, and that the Port's appraised value appeared substantially lower than other appraisals the trustee had seen.

On June 13, 1989, the Port Commissioners passed resolution number 2136 again authorizing the Port to initiate

[23]Clerk's Papers, at 315.

[24]Clerk's Papers, at 377-81.

[25]Clerk's Papers, at 159. In this order, the Bankruptcy Court indicated that it would be permissible for the site characterization study to be done by agreement and in cooperation with Citifor and the Department of Ecology. Clerk's Papers, at 384-85.

[26]In a December 8, 1987, letter to Steven R. Levy, attorney and trustee of the bankruptcy estate of RTC, Henry R. Soike, Executive Director for the Port of Grays Harbor, advised that "if our offer is not accepted, we will promptly commence condemnation proceedings." Clerk's Papers, at 358.

[27]Clerk's Papers, at 286.

[28]Clerk's Papers, at 159.

eminent domain proceedings to acquire the RTC property.[29] On July 17, 1989, the Port filed a petition in the Grays Harbor County Superior Court pursuant to that resolution.[30] On October 31, 1989, a hearing for findings of fact and conclusions of law was held before the Honorable Michael G. Spencer.[31] The court issued a declaration of public use.[32]

On May 9, 1990, the Port of Grays Harbor abandoned the condemnation proceedings against the RTC property.[33]

On September 4, 1990, the Grays Harbor County Superior Court granted the Port's motion for partial summary judgment and denied Citifor's cross motion for partial summary judgment on its claim for reimbursement of reasonable attorney fees and expert witness fees for pre-petition expenses. The Port previously agreed to and paid Citifor $165,000 for expenses it incurred after the petition for condemnation was filed.

On January 2, 1992, Citifor filed notice of appeal to the Court of Appeals, Division Two, seeking review of the trial court's order granting the Port's motion for partial summary judgment on Citifor's claim for attorney fees entered on September 4, 1990.[34] The Court of Appeals certified the matter to this court on August 10, 1993. We accepted certification on August 11, 1993.

### QUESTION PRESENTED

The sole question in this case is whether Citifor, a holder of a second deed of trust upon and prospective lessor of real property, is entitled under RCW 8.25.075 and RCW 8.25.070 to reimbursement for reasonable attorney and expert wit-

---

[29]Clerk's Papers, at 1-2. *See* RCW 53.08.010; RCW 8.12.

[30]Clerk's Papers, at 1-2. *See* RCW 53.08.010; RCW 8.12.

[31]Clerk's Papers, at 59, 288.

[32]*See* RCW 8.12.090.

[33]Clerk's Papers, at 93-97. *See* RCW 8.12.090.

[34]Clerk's Papers, at 488-503.

ness fees and costs incurred prior to a condemnation proceeding against that property by the Port of Grays Harbor as necessary preparation for defending its position in an anticipated condemnation proceeding which does not occur because of abandonment by the Port.

## DISCUSSION

Citifor claims it is entitled to "prepetition expenses" incurred in preparation for opposing the Port's condemnation action which the Port subsequently abandoned. Citifor claims those expenses include (1) attorney fees and costs incurred prior to July 17, 1989, the date the Port filed an eminent domain petition against the RTC property in the Grays Harbor County Superior Court; (2) environmental expert fees and costs incurred prior to July 17, 1989; and (3) attorney fees and costs incurred in Citifor's efforts to lease the RTC property.[35]

This court follows the general rule that "[i]n the absence of a contract, statute, or recognized ground of equity, a court will not award attorney fees as part of the cost of litigation."[36] But the Legislature has enacted a statute specifically providing for award of reasonable attorney and expert witness fees in eminent domain proceedings.[37] RCW 8.25.075 permits a condemnee to recover reasonable attorney and expert witness fees if a condemnation proceeding in eminent domain has been abandoned. It provides:

(1) A superior court having jurisdiction of a proceeding instituted by a condemnor to acquire real property *shall award the condemnee costs including reasonable attorney fees and reasonable expert witness fees* if:

. . . .

(b) *The proceeding is abandoned by the condemnor.*

(Italics ours.)

---

[35]Clerk's Papers, at 325-26.

[36]*PUD 1 v. Kottsick*, 86 Wn.2d 388, 389, 545 P.2d 1 (1976); *State ex rel. Macri v. Bremerton*, 8 Wn.2d 93, 113-14, 111 P.2d 612 (1941). Generally, "neither a state nor the United States[] is liable for costs when it seeks to take land by eminent domain, unless such liability is expressly created by statute." 4A Julius L. Sackman, *Nichols' The Law of Eminent Domain* § 14.24, at 14-543 (1950).

[37]RCW 8.25.075.

However, award of reasonable attorney fees and reasonable expert witness fees in condemnation proceedings is subject to RCW 8.25.070(4), which provides:

> Except as otherwise provided in subsection (3) of this section, if a trial is held for the fixing of the amount of compensation to be awarded to the owner or party having an interest in the property being condemned, *the court shall award the condemnee reasonable attorney's fees and reasonable expert witness fees in the event of any of the following*:
>
> (4) *Reasonable attorney fees* as authorized in this section shall not exceed the general trial rate, per day customarily charged for general trial work by the condemnee's attorney for actual trial time and his or her hourly rate *for preparation. Reasonable expert witness fees* as authorized in this section shall not exceed the customary rates obtaining in the county by the hour for investigation and research and by the day or half day *for trial attendance*.

(Italics ours.)

Neither RCW 8.25.075 nor RCW 8.25.070 defines "prepetition expenses", nor states whether "prepetition expenses" are recoverable by a condemnee. The language of both statutes is clear and unambiguous. "Where there is no ambiguity in a statute, there is nothing for this court to interpret."[38] In determining whether a statute requires interpretation, this court has stated:

> In construing a statute, the court's paramount duty is to ascertain and give expression to the intent of the Legislature. *Hama Hama Co. v. Shorelines Hearings Bd.*, 85 Wn.2d 441, 445, 536 P.2d 157 (1975). To determine the intent of the Legislature, the court "must look first to the language of the statute." *Condit v. Lewis Refrigeration Co.*, 101 Wn.2d 106, 110, 676 P.2d 466 (1984). "Where statutory language is plain and unambiguous, a statute's meaning must be derived from the wording of the statute itself." *Human Rights Comm'n v. Cheney Sch. Dist. 30*, 97 Wn.2d 118, 121, 641 P.2d 163 (1982).[39]

RCW 8.25.075 permits a condemnee to recover costs, which include reasonable attorney and expert witness fees, when

---

[38]*State v. Roth*, 78 Wn.2d 711, 714, 479 P.2d 55 (1971); *State ex rel. Hagan v. Chinook Hotel*, 65 Wn.2d 573, 399 P.2d 8 (1965).

[39]*Service Employees Int'l Union, Local 6 v. Superintendent of Pub. Instruction*, 104 Wn.2d 344, 348, 705 P.2d 776 (1985).

condemnation proceedings have been abandoned. The Port clearly *abandoned* the condemnation proceedings in this case. Thus, RCW 8.25.075 is applicable to a party who qualifies as a condemnee. When a condemnation proceeding is abandoned, a condemnee is then entitled to reasonable attorney fees and reasonable expert witness fees. Under the facts of this case, Citifor is a condemnee.

Although the Port did not file its eminent domain petition until July 17, 1989, Citifor claims it is entitled to attorney and expert witness fees incurred even prior to that date in preparation for trial. It claims that as a party with a record interest in the RTC property, it was put on notice of the Port's intent to condemn the RTC property on November 24, 1987, when the Port passed resolution number 2086 permitting it to acquire by purchase or condemnation all the property owned by RTC. Citifor argues that it was then necessary for it to prepare for litigation in the condemnation proceeding to protect its ownership interest in the property. It claims it was not until the Port obtained relief from the stay in the bankruptcy proceeding that the Port could actually exercise its eminent domain powers under state law to condemn the real property of the debtor.[40] Citifor thus claims it was reasonable for it to take necessary precautionary steps earlier to protect its second rank interest in the property, which included determining the value of the RTC property.

This case is somewhat similar to *In re Seattle*,[41] where the respondents in a condemnation proceeding claimed, and this court agreed, they were entitled under former RCW 8.25.030 and RCW 8.25.070 "to be reimbursed for their attorneys' fees and expert witnesses' fees . . . ."[42] incurred in preparation for defense of a $3 million jury condemnation award which the City of Seattle appealed. The City later abandoned the condemnation and the appeal. The attorney

---

[40]Clerk's Papers, at 326.

[41]79 Wn.2d 490, 487 P.2d 777 (1971).

[42]*In re Seattle*, at 491.

fees and expert witness fees totaled $443,974.38. In that case, as in this case, the City did not deny that the fees were actually incurred by the respondents and that they were reasonable.[43] While the Port in this case claims the statute does not allow reimbursement to Citifor for reasonable attorney and expert witness fees incurred prior to filing of the condemnation petition, it does not deny that Citifor actually incurred the expenses, nor does it deny the reasonableness of the fees.

This court has already considered what "factors enter into a court's determination of the 'reasonableness' of fees."[44] In *State v. Roth*, we concluded that RCW 8.25.070 provided the court with the "discretion . . . to determine the reasonableness of requested fees, not . . . to determine that *no* fee, even though reasonable, shall be awarded."[45] Under *Roth,* once attorney and expert witness fees are determined to be "reasonable", there must be an award of reasonable attorney and expert witness fees under RCW 8.25.070.[46] But *In re Seattle* is distinguishable from this case. The attorney fees and costs in *In re Seattle* were incurred *after* condemnation proceedings were begun. In this case, the fees and costs sought were incurred *prior to* institution of the condemnation proceedings.

### SUMMARY AND CONCLUSIONS

■ The language of RCW 8.25.070 and RCW 8.25.075 is clear and unambiguous. If a condemnation proceeding has been abandoned, a condemnee is entitled to reimbursement for reasonable attorney fees and reasonable expert witness fees incurred in preparation for trial.

The Port of Grays Harbor filed its petition for condemnation of the Roderick Timber Company property on July 17,

---

[43]*In re Seattle*, at 491.

[44]*State v. Siler*, 79 Wn.2d 789, 791, 489 P.2d 921 (1971) (quoting *State v. Roth*, 78 Wn.2d 711, 716, 479 P.2d 55 (1971)).

[45]78 Wn.2d 711, 716, 479 P.2d 55 (1971).

[46]*State v. Roth, supra.*

1989. At that time appellant Citifor, Inc., as holder of a second mortgage on the property, became a condemnee. The Port of Grays Harbor, as condemnor, abandoned its condemnation proceedings on May 9, 1990. As a condemnee, Citifor then became entitled to the benefit of RCW 8.25.075(1)(b) which provides that the superior court "shall award the condemnee costs including reasonable attorney fees and reasonable expert witness fees if . . . [t]he proceeding is abandoned by the condemnor." The Port in fact paid Citifor $165,000 for expenses it incurred for attorney fees and expert witness fees after the condemnation action was filed. This was in compliance with RCW 8.25.075(1)(b). The statute does not entitle Citifor to payment for any expenses it incurred prior to July 17, 1989 (referred to as "prepetition expenses").

We therefore affirm the order of the Grays Harbor County Superior Court granting partial summary judgment to the Port of Grays Harbor and denying the cross motion by Citifor for partial summary judgment on its claim for reimbursement of reasonable attorney fees and expert witness fees for "prepetition expenses".

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DURHAM, GUY, JOHNSON, and MADSEN, JJ., concur.