[Nos. 58113-9-I; 58782-0-I. Division One. July 23, 2007.]

*In the Matter of the Petition of the Seattle Popular Monorail Authority, a City Transportation Authority, To Acquire by Condemnation Certain Real Property for Public Use as Authorized by Resolution No. 04-16.*

HTK MANAGEMENT, LLC, ET AL., *Appellants*, v. ROKAN PARTNERS, ET AL., *Respondents*.

---

*George Kresovich* and *Timothy D. Benedict* (of *Hillis Clark Martin & Peterson*) for appellant HTK Management, LLC.

*P. Stephen DiJulio* and *Sharon E. Cates* (of *Foster Pepper, PLLC*), for appellant Seattle Popular Monorail Project.

*Richard C. Yarmuth* and *Jordan Gross* (of *Yarmuth Wilsdon Calfo, PLLC*), for respondent Rokan Partners.

*Paul A. Harrel, Daniel W. Ferm,* and *Megan L. Pedersen* (of *Williams Kastner & Gibbs, PLLC*), for respondent AMPCO Systems Parking.

¶1 GROSSE, J. — The power of eminent domain is an inherent power of the state and redelegations of that power to private parties are invalid. Here, the Seattle Monorail Project agreed to assign its rights in an uncompleted condemnation proceeding to a private party. Because the Seattle Monorail Project did not have the power to make such an assignment, and because the Seattle Monorail Project's actions evidenced its intent to abandon the condemnation proceedings, we affirm the trial court on this issue.

## FACTS

¶2 In April 2004, the Seattle Popular Monorail Authority, a/k/a Seattle Monorail Project (SMP), filed a petition to condemn property owned by HTK Management, LLC. The subject property contains a parking garage. Rokan Partners holds a long-term lease on the property, and AMPCO System Parking operates the garage as a sublessee of Rokan. HTK challenged the trial court's finding of public use to the Supreme Court.

¶3 The parties reached a mediated settlement agreement contingent upon the outcome of the Supreme Court case. The settlement agreement called for the entry of a stipulated judgment if SMP prevailed in the suit. The

stipulated judgment called for SMP to take title of the property through condemnation in return for a $10,400,000 just compensation award, inclusive of all fees and costs.

¶4 On October 20, 2005, the Supreme Court in *In re Petition of Seattle Popular Monorail Authority*[1] affirmed the trial court's finding of public use and necessity. By that time, public concern had arisen over the financial viability to the monorail project. SMP placed a modified monorail proposal before voters on November 8, 2005. The voters rejected the proposal, effectively terminating the project for which the subject property was to be acquired. On November 9, 2005, the SMP board of directors passed a resolution authorizing steps to terminate SMP. On November 16, 2005, the Supreme Court issued its mandate.

¶5 In light of SMP's changed fortunes, negotiations were conducted between the parties to arrive at another settlement. In December 2005, the SMP board of directors approved a settlement between HTK and SMP where SMP assigned its rights in the stipulated judgment to HTK. In return, HTK waived any claims that it might have against SMP and indemnified and held SMP harmless from any other claims arising from this action. When the stipulated judgment was presented for entry, Rokan and AMPCO filed motions to block its entry.

¶6 The trial court found in favor of Rokan and AMPCO. Specifically, the trial court concluded that SMP had abandoned the condemnation proceedings when it agreed to assign its rights to HTK under the stipulated judgment. The court dismissed the condemnation action and vacated the stipulated judgment. Furthermore, the trial court concluded that because SMP abandoned the condemnation, Rokan and AMPCO were entitled to costs and fees under RCW 8.25.075(1)(b).

¶7 At a subsequent hearing, Rokan and AMPCO requested costs and fees. AMPCO requested a total award of $311,780.97, and Rokan asked for $295,724.20. HTK and

---

[1] 155 Wn.2d 612, 121 P.3d 1166 (2005).

SMP opposed the requested fees. The trial court awarded AMPCO $247,609 and Rokan $194,170.

¶8 HTK and SMP appeal the trial court's decisions vacating the stipulated judgment and awarding Rokan and AMPCO fees. Rokan cross-appeals the trial court's decision awarding it less than the full amount of its requested fees. AMPCO does not cross-appeal the decision to award it less than the full amount of its requested fees but asks that its fee award be affirmed.

## ANALYSIS

¶9 This case presents the issue of whether a public entity's agreement to assign its rights as a condemnor to a private party under an uncompleted eminent domain proceeding constitutes an abandonment of the condemnation by the public entity. The trial court concluded that SMP lacked the power to assign its rights as condemnor to HTK. Furthermore, SMP had abandoned the condemnation proceedings when it agreed to assign its rights to HTK under the stipulated judgment. For the reasons stated below, we agree with the trial court.

¶10 "The power of eminent domain is an attribute of sovereignty; it is an inherent power of the state."[2] The limits of this power are set out in the Washington State Constitution, article I, section 16, which states:

> Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes, or ditches on or across the lands of others for agricultural, domestic, or sanitary purposes. No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner, and no right-of-way shall be appropriated to the use of any corporation other than municipal until full compensation therefor be first made in money, or ascertained and paid into court for the owner, irrespective of any benefit from any improvement pro-

---

[2] *State v. King County*, 74 Wn.2d 673, 675, 446 P.2d 193 (1968).

posed by such corporation, which compensation shall be ascertained by a jury, unless a jury be waived, as in other civil cases in courts of record, in the manner prescribed by law. Whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such, without regard to any legislative assertion that the use is public: *Provided*, that the taking of private property by the state for land reclamation and settlement purposes is hereby declared to be for public use.

¶11 As with what happened in this case, the state legislature may expressly delegate its power of eminent domain to a city transportation authority.[3] Such legislative delegations are strictly construed, and thus, redelegations of eminent domain powers are generally held to be invalid.[4] Here, SMP assigned its rights in an uncompleted condemnation proceeding to a private party, HTK. SMP lacked the authority to make such an assignment. The trial court was correct.

¶12 Moreover, the trial court correctly concluded that SMP's approval of the assignment evidenced its intent to abandon the condemnation. The elements of abandonment of a condemnation proceeding are set forth in *Nichols on Eminent Domain*:[5]

Abandonment has two elements: the intent to abandon and the performance of an external act giving effect to the intent. Condemnation may be abandoned by the passage of a resolution or the repeal of the initial ordinance that permitted the commencement of the condemnation action. The intent necessary for an abandonment may be shown by actions, conduct, or declarations.

SMP's intent to abandon the condemnation is expressed in its resolution approving the assignment. By its own words,

---

[3] *See* RCW 35.95A.050(1).

[4] *King County*, 74 Wn.2d at 675-76.

[5] 6 Julius L. Sackman, Nichols on Eminent Domain § 26D.01[1][b] (3d ed. 2006) (footnotes omitted).

SMP approved the assignment because it "would permit the owner of that property *to keep the property* while at the same time protecting the Seattle Monorail Project and its taxpayers from any further liability, cost or expense related to the acquisition of that property."[6] If condemnation means anything, it is that the governmental entity actually takes privately owned property and assigns it to public use. Here, SMP by its own admission did not intend to take the property at all but, instead, intended to allow HTK (as SMP's assignee) to remain the private owner of the property. It follows that SMP's approval of the assignment agreement by resolution was the external act demonstrating that SMP did not intend to take the property and assign it to public use.

¶13 HTK argues that the basis for the trial court's ruling was CR 60(b)(11). Rokan's motion cited as authority CR 60(b)(1), (b)(3), (b)(6), and (b)(11), while AMPCO's motion cited CR 60(b)(3) and (b)(11) as grounds for relief. The trial court's order does not state which rule it applied. CR 60(b)(11) states, "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for . . . [a]ny other reason justifying relief from the operation of the judgment." HTK argues that this rule is primarily equitable in nature; that the trial court failed to balance the equities in providing relief under this rule; and that if the equities are considered, they favor HTK and the entry of the stipulated judgment. Essentially, HTK argues that it was misled by Rokan and AMPCO into thinking that its deal with SMP would meet with their approval.

¶14 However, equity cannot be used to confer upon a city transportation authority like SMP powers that are without legal authorization.[7] Thus, equity cannot save HTK and SMP from the fact that the attempted assignment was not

---

[6] (Emphasis added.)

[7] *See Finch v. Matthews*, 74 Wn.2d 161, 172, 443 P.2d 833 (1968).

legally permissible, or from the fact that SMP's action in approving the assignment qualifies as an abandonment of the condemnation. Furthermore, the circumstances surrounding this case were highly unusual and would justify the trial court's use of CR 60(b)(11). Thus, the trial court did not abuse its discretion in exercising its powers under CR 60(b) to vacate the stipulated judgment, block the assignment, and find that SMP had abandoned the condemnation.

¶15 Additionally, SMP argues that RAP 12.2 requires the trial court to enter the stipulated judgment because the Supreme Court's mandate so requires. However, RAP 12.2 states that "[a]fter the mandate has issued, the trial court may, however, hear and decide postjudgment motions otherwise authorized by statute or court rule so long as those motions do not challenge issues already decided by the appellate court." The issue before the trial court here was whether SMP had since abandoned the condemnation by assigning its rights in the stipulated judgment to HTK in an effort to reduce its administrative costs and reduce its potential liability. This issue was not before the Supreme Court in the prior litigation and, pursuant to RAP 12.2, the trial court was permitted to hear it and enter judgment on that issue.

¶16 In sum, because SMP had no authority to confer upon HTK its rights as a condemnor, and because the evidence establishes that SMP intended to abandon the condemnation and took affirmative steps to abandon the condemnation, the trial court did not err when it vacated the stipulated judgment, found SMP had abandoned the condemnation, and dismissed the condemnation proceeding.

*Costs and Attorney Fees*

¶17 Because the trial court did not err in finding SMP had abandoned the condemnation proceedings, RCW 8.25.075 applies and Rokan and AMPCO are entitled to reasonable costs and attorney fees at trial and on appeal. RCW 8.25.075 states in pertinent part:

(1) A superior court . . . shall award the condemnee costs including reasonable attorney fees and reasonable expert witness fees if:

(a) There is a final adjudication that the condemnor cannot acquire the real property by condemnation; or

(b) The proceeding is abandoned by the condemnor.

. . . .

(4) Reasonable attorney fees and expert witness fees as authorized in this section shall be subject to the provisions of subsection (4) of RCW 8.25.070 as now or hereafter amended.

RCW 8.25.070(4) states:

Reasonable attorney fees as authorized in this section shall not exceed the general trial rate, per day customarily charged for general trial work by the condemnee's attorney for actual trial time and his or her hourly rate for preparation. Reasonable expert witness fees as authorized in this section shall not exceed the customary rates obtaining in the county by the hour for investigation and research and by the day or half day for trial attendance.

¶18 Here, the trial court failed to explain its fee award decision in sufficient detail, and that has led the parties to argue several theories on appeal as to why they believe the decision was wrong, based on their own differing interpretations of the trial court's order. In its written order, the trial court handwrote the following explanation for its reduced fee award:

The court has reviewed the submissions of the parties and finds that the fees and costs awarded to AMPCO and Rokan represent the reasonable attorney fees and reasonable expert witness fees authorized by RCW 8.25.075 and RCW 8.25.070(4). *The court has made adjustments to the requested award amounts by subtracting fees not reasonably related to trial preparation in this matter.*[8]

It is not entirely clear from the court's decision, but it is possible to assume based on the arguments of the parties

---

[8] (Emphasis added.)

below that the trial court relied on *State v. Trask*[9] and *Port of Grays Harbor v. Citifor, Inc.*[10] to deduct fees that it believed were not applicable to the just compensation phase of the litigation and, thus, not reasonably related to trial preparation.

¶19 In *Port of Grays Harbor*, the Supreme Court concluded that under RCW 8.25.070 and .075 the condemnee was not entitled to attorney fees incurred prior to the condemnation petition being filed.

¶20 In *Trask*, Division Two of the Court of Appeals held that the legislature, through RCW 8.25.070, intended to award fees incurred by a condemnee to establish just compensation, but not fees incurred solely to apportion such compensation between condemnees. Assuming that the compensation portion of condemnation proceedings contains a just compensation phase and an allocation phase, the court explained it reached its decision based on the concern that the fees incurred at the allocation phase (where the condemnees determined the division of the just compensation award) would be incurred in the State's absence, depriving the State of the opportunity to challenge their reasonableness. The court further held "that fees incurred to establish just compensation include fees paid to produce evidence relevant *in any way* to the amount of just compensation."[11] This would include fees incurred to produce evidence of the value of one of the condemnee's interests, if the value of that condemnee's interest was a factor for the trier of fact to consider in establishing just compensation of the property as a whole.[12]

¶21 Rokan challenges the *Trask* court's reasoning, stating that the distinction drawn between the just compensation and allocation phases is a false one because the issues

---

[9] 91 Wn. App. 253, 957 P.2d 781 (1998).

[10] 123 Wn.2d 610, 869 P.2d 1018 (1994).

[11] *Trask*, 91 Wn. App. at 280.

[12] *Trask*, 91 Wn. App. at 280 n.55.

are often litigated together (and were so even in *Trask*) and, therefore, the State is often continuously in a position to challenge the reasonableness of the fees. Rokan argues the evil the *Trask* court wished to prevent in its decision does not justify its decision even under the facts in *Trask* and, therefore, should not justify the same result in this case where SMP remained a party to the suit and thus was able to challenge the reasonableness of the fees throughout the lawsuit.

¶22 However, the *Trask* court reached its result even in the absence of the assumed facts that drove its analysis. That decision was denied review by the Supreme Court and is now the law of the State of Washington and must be followed by this court and the trial court, no matter how questionable its reasoning.

¶23 That said, it is not entirely clear from the trial court's decision whether the trial court deducted fees it determined were related solely to allocation issues, nor is it clear what fees it deducted. Without adequate findings of fact and conclusions of law explaining the trial court's fee award, we cannot meaningfully review the fee award.[13] We thus remand the fee issue to the trial court for entry of additional findings of fact and conclusions of law that explain its fee award.

¶24 For the above reasons, we affirm in part and remand in part.

APPELWICK, C.J., and DWYER, J., concur.

---

[13] *Mahler v. Szucs*, 135 Wn.2d 398, 435, 957 P.2d 632 (1998) (as to an award of fees, findings of fact and conclusions of law are required to establish an adequate record for appellate review).